The People ex rel. Henry S. Noyes, Respondent, v. The Board of Canvassers of Chemung County, Appellants.

It is not the duty of a board of county canvassers to ascertain which of the candidates for an office was in fact elected, but simply to determine from the documentary evidence before them furnished by the inspectors of election, upon which alone they may act, the number of votes given for each candidate.

Where, in the return made by the inspectors of election of a district, in compliance with the election law (Chap. 130, Laws of 1842), a discrepancy appears in regard to the number of votes cast for a candidate for an office, between the statement thereof contained in the body of the certified statement and the votes shown by the writing upon the ballots attached, the former must control, and the board of county canvassers is bound thereby. (Earl, J., dissenting.)

*It seems*, that the county canvassers may cause any return to be sent back to the inspectors for the purpose of correcting clerical errors, and where the inspectors have omitted to attach sample ballots with the number of each cast written partly thereon as required (§ 42), the return may be

1891.]    People ex rel. Noyes *v.* Bd. of Canvassers.    393

Statement of case.

corrected in this respect; but a return properly made by inspectors, of the vote as announced at the close of the canvass, may not be sent or taken back for the purpose of a recount, or to vary or contradict the result as expressed in the body of the return.

Where a board of county canvassers, in a case where such discrepancies appeared in several returns, took the vote for the candidate as it appeared by the writings upon the ballots attached, instead of as stated in the body of the returns, and where the inspectors in one district, upon refusal of the county clerk to file their returns, because of failure to attach sample ballots, made out a new certified statement which varied from the original as to the number of votes given to each of two opposing candidates for the office in question, *held* (Earl, J., dissenting), that an order was properly granted directing the issuing of a peremptory writ of mandamus requiring the board to reconvene, recanvass and make a true and correct canvass.

(Argued April 13, 1891; decided June 2, 1891.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department made February 3, 1891, which affirmed an order of the Special Term directing the issuing of a writ of peremptory mandamus, the nature of which, as well as the facts, are set forth in the opinion.

*Hamilton Harris* and *Frederick Collin* for appellants. The issuance of a peremptory writ of mandamus is authorized or justified only by the presentation of facts proving that the relator has a clear and plain right beyond the touch of a doubt or question, to the performance of the act demanded and that the duty, equally unquestionable, rests upon the person or body to be commanded to perform such particular act. (High on Ex. Leg. Rem. §§ 9, 10, 32; *People ex rel.* v. *Bd. Suprs.*, 64 N. Y. 600; *People ex rel.* v. *Wendall*, 71 id. 171; *People ex rel.* v. *Hoyt*, 66 id. 606; *People* v. *Cook*, 8 id. 67; *Morgan* v. *Quackenbush*, 22 Barb. 72; *Felt's Case*, 11 Abb. [N. S.] 203; High on Ex. Rem. § 56; *State* v. *Governor*, 25 N. J. L. 331; *Luce* v. *Mayhew*, 79 Mass. 83; *People ex rel.* v. *Schiellien*, 95 N. Y. 124; *People* v. *Supervisors*, 12 Barb. 217; *People ex rel. Francis* v. *Common Council*, 78 N. Y. 33; *People ex rel.* v. *Chapin*, 104 id. 96; *Judges, etc.*, v. *People*, 18 Wend. 78.)    Chapter 460 of the Laws of 1880, does not

in any way affect the duties or rights of the board.    It pro-
vides new, or extends existing remedies for a failure or neglect
of performance.    It has no bearing whatever upon the merits
of the case.    (*People ex rel.* v. *Bd. Canvassers,* 54 Hun, 595 ;
*Kortz* v. *Bd. Canvassers,* 12 Abb. [N. C.] 84; *People ex rel.*
v. *Bd. Canvassers,* Id. 77 ; *People* v. *Bd. Suprs.,* 15 Barb.
217 ; *People* v. *Bd. Suprs.,* Id. 907.)    The ballots and the
accompanying statements are evidence before the board of the
facts thereby stated and of the number of votes received by
the respective candidates.    (Laws of 1842, chap. 130, §§ 35,
42, 44, 45, 47, 48; Laws of 1880, chap. 56, § 14; *Hall* v.
*People,* 90 N. Y. 488, 498 ; Laws of 1872, chap. 675 ; *People ex
rel.* v. *Bd. Suprs.,* 58 How. Pr. 141; *County of Lawrence* v.
*Schmaulhausen,* 121 Ill. 321 ; *People ex rel.* v. *Thacher,* 55 N. Y.
525 ; *State ex rel.* v. *State Canvassers,* 36 Wis. 498; *Attorney-
General ex rel.* v. *Barstow,* 4 id. 567 ; *Pacheco* v. *Beck,* 52
Cal. 3 ; *People ex rel.* v. *Holden,* 28 id. 123.)    The board of
canvassers might properly and legally estimate the votes from
the ballots and accompanying statements, or if not it was their
duty to send the statements back to the inspectors for correction.
(High on Ex. Rem. § 56 ; *State* v. *Hill,* 20 Neb. 119 ; *State ex rel.*
v. *Bailey,* 7 Iowa, 390 ; *State ex rel.* v. *State Canvassers,* 36 Wis.
498; *O'Gorman* v. *Richter,* 31 Minn. 25 ; *Dorey* v. *Lynn,* 31
Kans. 758 ; *State ex rel.* v. *Pierpont,* 29 Wis. 608.)    The
returns before the board of canvassers were genuine and regu-
lar, and were the statements of the inspectors of each of such
districts required by the statute to be made by them and
delivered to the supervisor.    (*People ex rel.* v. *Bd. Canvas-
sers,* 12 Abb. [N. C.] 77 ; Code Civ. Pro. § 2070 ; *Milliken*
v. *W. U. T. Co.,* 110 N. Y. 403 ; *Ex parte Heath,* 3 Hill, 42 ;
*Metcalf* v. *Mayor, etc.,* 17 N. Y. S. R. 97 ; *People* v. *Cook,*
14 Barb. 259, 290, 291 ; 8 N. Y. 67 ; *State ex rel.* v. *Stumpf,*
21 Wis. 586.)    The appeal may be taken to this court.    (*Peo-
ple ex rel.* v. *Chapin,* 104 N. Y. 96.)

*W. A. Sutherland* for respondents.    In the second district
of the first ward, the Special Term properly directed the board

of canvassers to recanvass from the original returns of that district, filed by affiant Wells, and to reject the second set of returns. (*Russell* v. *Bd. Canvassers*, 46 Hun, 390.) The appellants are not aided by the alleged production of ballots claimed to have been voted, and a recount thereof subsequent to election day. (*State ex rel.* v. *Bates*, 70 Wis. 409; *Kane* v. *People*, 4 Neb. 509; *Kingery* v. *Berry*, 94 Ill. 515.) The county canvassers were bound by the face of the returns, and could not count or estimate from a tally or computation based upon the ballots attached to the official certificate and statement. (*People* v. *Bd. Canvassers*, 34 N. Y. S. R. 9; 1 R. S. 421.) The ballots on the back form no part of the statement from which the vote is to be canvassed by the county canvassers. (1 R. S. 413, 421; Laws of 1890, chap. 325; Laws of 1885, 323, § 730; Laws of 1880, chap. 336; Laws of 1890, chap. 262, §§ 16, 17, 24, 25, 31; Code Civ. Pro. § 667; *People ex rel.* v. *Pease*, 27 N. Y. 45; *People* v. *Cook*, 14 Barb. 258; *People* v. *Mink*, 21 N. Y. 539; *People ex rel.* v. *Thatcher*, 7 Lans. 274; 55 N. Y. 532.) The ballots attached to the statements were of no force as evidence of the number of votes received by any candidate. (*Leigh* v. *State*, 69 Ala. 261; *State* v. *Triggs*, 72 Mo. 365; *Mayo* v. *Freeland*, 10 id. 669; *People ex rel. Fuller* v. *Hilliard*, 29 Ill. 413–422.) The utmost force that can be claimed for the ballots attached to the statements is that a discrepancy exists between the clearly, fully written "statement" of the result of the canvass, and a computation upon these ballots. (*Deuchler* v. *Wayne Co.*, 12 Abb. [N. C.] 77; *Russell* v. *Bd. Canvassers*, 46 Hun, 390; *Felt's Case*, 11 Abb. [N. C.] 203; *State ex rel.* v. *State Canvassers*, 36 Wis. 498.) The duty of the Supreme Court in this matter was not merely ministerial, but was in the strictest sense judicial. The court was authorized to ascertain the facts and to direct how the ministerial duty of the board of canvassers should be performed. (Laws of 1880, chap. 460; *People ex rel.* v. *Patton*, 5 N. Y. S. R. 313, 314, 315; *People ex rel.* v. *Assessor*, 52 How. Pr. 140; *People ex rel.* v. *Supervisors*, 25 N. Y. S. R. 837; *People ex rel.* v. *McGuire*, 29 id. 674.)

O'BRIEN, J.   The Supreme Court, upon the application of the relator, has made an order directing that a peremptory writ of mandamus issue to the board of supervisors of the county of Chemung, constituting the board of county canvassers, commanding them forthwith to reassemble and reconvene, recanvass and retabulate and forward to the secretary of state a true and correct canvass and statement of the result of the last general election, so far as the same relates to representative in congress in six of the election districts in the city of Elmira. The board was further required to make the estimate and tabulated statement from the face of the original returns of the inspectors of election in these election districts, instead of from the ballots on the back thereof.   The order directing the writ was made after the board of county canvassers had canvassed the votes given for all officers voted for at the general election held in the county, including the vote for representative in congress for the twenty-eighth congressional district, of which the county formed a part, and had filed a certified statement of the result of such canvass in the office of the county clerk of the county and the secretary of state as required by law. The relator claims that the board did not comply with the statute in making the canvass, and that the result of the vote, in respect to representative in congress in the six election districts so made, certified and filed by it is not correct. Before examining the question involved in the appeal from the order, it is proper to notice a preliminary question.   The record submitted to us is accompanied by a motion to the court, made upon notice and affidavits, from which it appears that the board of state canvassers, in pursuance of the statute, met and organized as such board at the office of the secretary of state on the 5th day of December, 1890.   That it then and there proceeded to canvass and did canvass the vote given for officers at the preceding general election, including representative in congress for the various congressional districts of the state, from the returns and certified statement on file in the office of the secretary of state, made and filed by the various boards of county canvassers in the several counties.   That the

vote for representative in congress from the twenty-eighth
congressional district was canvassed from the returns and cer-
tified statements received from the several boards of county
canvassers of the county comprising the district, as certified
and filed in the office of the secretary of state by the county
clerks of the several counties.   That there was but one return
or certified statement from each county in the congressional
district, and no protest or claim that any return on file and before
the state canvassers was in any respect erroneous.   That from
the statement of the vote for congress, contained in the state-
ments from the counties comprising the twenty-eighth district,
it appeared that Hosea H. Rockwell had received the greatest
number of votes, and was elected to that office.   The board of
state canvassers made a statement in writing of the result, duly
signed and filed the same and delivered a certificate to said
Rockwell of his election, in compliance with the statute.   On
these facts we are asked by counsel for Rockwell to stay all
proceedings upon this appeal, on the ground that any decision
that we can make will be entirely ineffectual.   That there is
no power to review or change the action of the state canvassers
upon the returns before them, or to recall the certificate of elec-
tion issued.   That the only authority now competent to review
the action of the state canvassers is the house of represent-
atives, in virtue of its ultimate power, under the Constitution,
to judge of the election of its own members.   No good reason
has been or can be given for staying the appeal at the request
of the parties bringing it here, but to my mind there are cogent
reasons for refusing to hear it and disposing of the case by
dismissal.   The time and attention of this court is sufficiently
occupied by the pressing demands of actual and practical liti-
gation, and it ought not to be asked to listen to arguments and
examine records involving questions purely abstract or theo-
retical, or when it appears that its judgments or decisions can
have no practical effect upon the controversy.   This seems to
me to be a case of that character.   But the court has arrived
at the conclusion that we ought not to anticipate what may
occur in the future in regard to the practical consequences of

our decision, as a reason now for declining to hear an appeal regularly and properly before us. We do not know, from the record, what effect, if any, the method of canvassing the vote in the six election districts, adopted by the county canvassers, had upon the result as declared by the state canvassers. All we do know is that the principle adopted gave, in these districts, to Mr. Rockwell, a few votes more, and to Mr. Noyes a few votes less than the manner of canvassing directed by the mandamus. It is conceded that immediately after the close of the polls in each of the six election districts, on the 4th of November, 1890, the inspectors counted the vote for representative in congress in its regular order, publicly announced the result, inserted in words written at full length in the body of the certificate, the whole number of votes given for each candidate, certified the statement to be correct and signed the same, and then dissolved as a board of inspectors and canvassers. The result thus announced and inserted in the certificate, in these particular districts, gave, in the aggregate, to Hosea H. Rockwell, four hundred and fifty-eight votes, and to Henry T. Noyes, four hundred and eighty-eight votes for member of congress. The election was held under chapter 262 of the Laws of 1890, and it is possible that the inspectors may have been ignorant as to what parts of the law, governing the conduct of elections and the canvass of the vote, existing prior to that enactment, remained still in force. No facts appear in the record upon which intentional fraud or dishonesty can be imputed to them. That they were wanting in the knowledge necessary for an efficient performance of the duty imposed upon inspectors of election, is quite clear. They failed to attach to the statement signed by them, the sample ballots as directed by the statute (1 R. S. [8th ed.] p. 421, § 42), and they also failed to destroy the ballots voted, but carefully preserved them, some of the inspectors, apparently, being of the impression that they were required to file them with the county clerk. The inspectors' returns were presented the next day to the county clerk for filing in his office, but he refused to receive or file them for the reason that no sample ballots were

attached. The inspectors, or a majority of them in each district, thereupon opened the sealed packages in which the ballots voted were placed the night before, in some of the districts, and the boxes in which they were locked up in others, recounted them, and attached in each case one of each variety cast to the return and wrote, partly upon the ballot and partly upon the paper to which it was attached, in words, the number of such ballots voted, as required by the statute, and then the returns were delivered to the county clerk and by him filed. These facts are common to five of the districts. In the other, the second of the first ward, the inspectors attached the sample ballots with the statement thereon to a new certificate, in which was written in the body thereof the number of votes cast for each candidate as shown by the writing on the ballots, and which was four votes less for Mr. Noyes, and four votes more for his opponent than announced and inserted in the paper the night before. The numerous affidavits embraced in the record contain many details touching the counting of the vote at the close of the polls and the events following with, possibly, some shades of difference, none of which, we think, are important to notice here, as the foregoing statement is sufficiently full and accurate for all purposes of the question which we are to decide.

The controversy arises upon the conceded fact that there was before the board of county canvassers a certificate of the inspectors of election which contained one result of the vote for member of congress in the body of the paper, and another and different result in the writing on the attached ballots. The board canvassed and estimated the vote for member of congress in these districts according to the writing on the ballots, and not according to that contained in the body of the paper, and this method of canvassing and estimating the result gave Rockwell four hundred and eighty-one votes and Noyes four hundred and sixty-six votes, or Rockwell twenty-three votes more and Noyes twenty-two votes less than the number announced at the close of the canvass by the inspectors, and inserted by them in the certificate. The question is whether

the board of county canvassers, in thus canvassing and certifying the vote, performed the duty imposed upon them by the law. It was not their duty to ascertain which of the candidates was in fact elected, nor even which of them in fact received the greatest number of votes in the six districts, but simply to determine from the documentary evidence before them, furnished by the action of the inspectors, and upon which alone they could act, the number of votes given for each candidate respectively for representative in congress. This document, from which the canvassers are required, in a ministerial capacity, to estimate and certify the vote is called in the statute a *statement;* and this controversy arises from what appears to be an honest difference of opinion between 'the learned counsel who have presented the case as to the true scope and meaning of that word. On the one hand it is argued that when there is a conflict between the writing on the attached ballots and that inserted in the body of the paper, the board, in canvassing the vote, is bound by the latter, while, on the other hand, it is insisted that the attached ballots and the writing thereon are a part of the statement, and it is within the power of the board to estimate and certify the true vote from them. The question thus becomes one purely of construction. The importance of an honest and consistent administration of the laws governing the conduct of elections and the preservation of every safeguard provided by the law, for the purpose of ensuring a true and honest canvass and return of the vote cast, has often been emphasized in the opinions of courts, and cannot be too often stated. In a government resting wholly on popular suffrage, few questions can ever come before the courts so intimately connected with the very structure of political society and exerting such a wide influence upon the public welfare as those concerning the enforcement and construction of the laws relating to elections and the canvass and return of the vote. When they are open to construction they should receive from the courts, if possible, such an interpretation as is most likely to secure the object of their enactment. It is quite unreasonable to suppose that the

election laws of this state have been so framed as to render it
legally possible, in every election district, to produce a conflict
between the result of the vote, as written upon the attached
ballots, and that expressed in the body of the paper, and at
the same time leave the county canvassers in each county at
liberty to adopt whichever result is most in harmony with their
personal or political affiliations. Such a construction would
open the door to abuses the most grave and dangerous. A
system so elastic would destroy all confidence in the result of
elections, and would very soon become intolerable. An intel-
ligent and consistent administration of our statutes relating to
the canvass of the vote by county canvassers, requires that
when there is conflict in this respect they shall be bound by
some rule that is reasonable and certain, and not subject to
variation, according to the discretion of each board. In my
opinion the writing in the body of the certificate, expressing
the result of the count by the inspectors at the close of the
polls, and publicly announced by them and certified under
their official certificates to be correct, must prevail over any
contrary result that can be obtained from the writing on the
ballots. The words written into the paper by the inspectors
must be deemed to express the actual and correct result of
their count. They are precise and certain and to the effect
that a certain number of votes were given for a person therein
named for a designated office. Not so with the writing on
the ballot. That imports simply that a certain number of
tickets of each variety were voted, from which and from an
inspection of the sample ballots themselves, the actual vote for
any given candidate may or may not be accurately ascertained.
A result so deduced would practically amount to a recount of
the ballots by the board of county canvassers, instead of an
estimate and canvass of the vote upon the certified statement
of the inspectors as the statute requires.

The act of the inspectors in stating the vote in the body of
the paper, the certificate that the same is correct and the sig-
nature of each of them to the certificate is, so far as the county
canvassers are concerned, fundamental, jurisdictional and con-

trolling, while the words on the ballot are subordinate and incidental and the duty of the inspectors in respect to the same is probably directory merely. The form of the *statement* which the inspectors are to make and upon which the board is to act is pointed out by the statute with care. It must have a caption, stating the day on which, and the number of the district, the town or ward and the county in which the election is held, a statement showing the whole number of ballots, for each person, designating the office, which shall be written in words at length; and, at the end thereof, a certificate that such statement is correct in all respects, which shall be subscribed by the inspectors (§ 44). By a recent statute it is enacted that this *statement* shall be made upon a single sheet of paper, or if not, each half sheet shall be signed at the end thereof, by the inspectors. (Laws 1880, ch. 56, § 11.) When this word *statement* was first used to designate the return of the district inspectors to the county canvassers, there was no provision for attaching any ballots, but, on the contrary, it was expressly provided that, upon the subscription thereof by the inspectors, they should immediately destroy all the poll-books and the ballots voted. (Laws 1822, ch. 201, § 9.) The case of *The People ex rel. Yates* v. *Ferguson* (8 Cowen, 102), decided in 1827, turned upon the effect to be given to certain ballots, which the inspectors had rejected as defective. The Revised Statutes enacted soon after this decision, changed the law as previously existing, only so far as to require defective ballots to be preserved and filed with the town clerk. In the next election law, passed in 1842, (Laws 1842, ch. 130) the inspectors were required to attach to the statements, not only the defective ballots, but a sample of all others voted, with the writing thereon, showing the number of each kind cast, and this section has remained unchanged ever since. (Id. § 42, p. 122.) At the same time it was enacted that the poll-books should be preserved and all the ballots voted, not so attached, should be destroyed. The history of the provision first requiring the specimen ballots and writing thereon to be attached to it, shows that it was never intended that the latter could be used by the county canvassers to over-

throw the result certified by the inspectors in the paper, made immediately after the count. (*People* v. *Pease*, 27 N. Y. 85, 86.)

They are mere exhibits that no more control the words of the statement than did the defective ballots, when first required to be preserved and attached. The county canvassers may cause any return to be sent back to the inspectors for the purpose of correcting clerical errors. The ballots voted are, in contemplation of law, destroyed immediately after the completion of the count by the inspectors, except such as are required to be attached to the statement. The board might return a statement to the inspectors for the purpose of attaching the sample ballots and noting thereon the number of each kind voted, so far as that could be done, but not for the purpose of a recount to vary or contradict the result expressed in the body of the certificate. It would be absurd to require inspectors to recount votes after they were required by law to destroy them. The recent statute (Laws 1880, ch. 460) confers power upon the court to require, by order, a board of county canvassers, after it has dissolved, to reconvene and correct any errors .in its canvass of the vote at an election, and the order granted in this case is, we think, fairly within its scope. In our opinion the statement, in the body of the paper as to the vote for representative in congress in the five districts, and in the other, the statement made on the night after the election, must control the action of the county canvassers. If it be claimed that the actual result at the polls was different in fact, from that shown by this statement, that question must be left for the determination of another tribunal. These views lead to an affirmance of the order.

Earl, J. (dissenting). The duties of the officers concerned in ascertaining and returning the results of any election are particularly pointed out in the statutes and the faithful discharge of all those duties is enforced by severe penalties; and frauds therein are not easy and ought to be very uncommon.

The mode of canvassing the votes and ascertaining the results

of elections are provided for in the act, chapter 130 of the Laws of 1842, and subsequent acts.    In article 4 of title 4 of the act of 1842, the duties of inspectors of elections are prescribed. They are first to see that the whole number of ballots corresponds with the whole number of votes shown by the poll-lists, and then, as provided in section 40, they are to proceed to canvass and estimate the votes.    Section 42 contains a provision for the first time found in the laws of this state as follows: " The canvass shall be completed by ascertaining how many ballots of the same kind corresponding in respect to the names of persons thereon, and the offices for which they are designated, have been received; and the result being found the inspector shall securely attach to a statement of such canvass one ballot of each kind found to have been given for the officers to be chosen at such election, any or either of them, except those given for electors of president and vice-president; and they shall state in words at full length immediately opposite such ballot, and written partly on such ballot and partly on the paper to which it shall be attached, the whole number of all the ballots that were received which correspond with the one so attached, so that one of each kind of the ballots received at such election for the officers then to be chosen, shall be attached to such paper, with a statement of such canvass.    They shall also attach to such paper the original ballots rejected by them as being defective which were given at such election."    Section 43 contains a similar provision as to the canvass and statement of the votes given for presidential electors.    Section 44 is as follows: ".The statements to be made by the inspectors shall contain a caption stating the day on which, and the number of the district, the town or ward, and the county at which the election was held in relation to which such statement shall be made; it shall also contain a statement showing the number of ballots taken for each person, designating the office for which they are given, which statement shall be written in words at length; and at the end thereof a certificate that such statement is correct in all respects; which certificate shall be subscribed by the inspectors."

In this case, in some of the returns placed before the county canvassers, there were discrepancies between the number of votes written in the statements under section 44, which for brevity I will call general statements, and the numbers written on and opposite the ballots attached under section 42, which I will call detailed statements, the latter numbers being greater than the former in most cases where discrepancies existed. The canvassers decided to canvass the returns by taking the detailed statements, and they did so canvass; and the relator complains of this, claiming that they were bound to take and canvass the general statements and ascertain the results of the election from them. The court below upheld the claim of the relator and commanded the canvassers to canvass the returns by taking the general statements and wholly disregarding the detailed statements. The sole question of law for our consideration is whether the court could legally issue this peremptory command to the canvassers, and this question must be solved by a careful reading and scrutiny of the statutes and thus arriving at the intention of the law makers.

Under section 42 the inspectors are first to ascertain how many ballots of each kind have been received, and then they are to attach one ballot of each kind, omitting none, to the statement and write opposite to it, and partly on it, the number of such ballots received   The detailed statement will thus show, by adding the numbers thus written, the whole number of votes given at the election and how many were given for each candidate.

Why are the ballots required to be thus attached?   In 1842 when this provision first came into the law, ballots could be written or printed, in any form, of any size and upon any paper, and hence the requirement that the ballots should be attached could not have been to show whether or not some law had been complied with.   Yet the ballots are to be attached for some purpose. .For what purpose?   Undoubtedly as an additional security for an accurate canvass and as an additional safeguard against frauds and mistakes.   The ballots are not only to be attached, but the numbers of the ballots are

to be written partly on the ballots and on the paper to which they are attached. Why is this minute requirement if they are to serve no purpose and have no effect? Can it be supposed that all this is a mere idle ceremony? Who shall say that the general statement and the detailed statement are not of equal importance? One is evidently intended as a check on the other. The general statement is made up of the details contained in the other and they should exactly correspond. The canvass is not completed until the ballots have been counted, attached and written on. The detailed statement is part of the canvass. It is made under the same sanctions as the general statement, and the same punishment can be meted out to inspectors for any fraud or wrong in respect thereto. It is to be canvassed and verified in the same way as the general statement, and the general certificate required by section 44 applies to it as well as to the general statement. Section 11 of the act, chapter 56 of the Laws of 1880, requires that " every return or statement of the result of the canvass of any election shall be made upon a single sheet of paper, or, if not, each half sheet shall be signed at the end thereof by the inspectors ; " and here the return or statement means the whole return or statement which the inspectors are bound to make, including the attached ballots and what is written thereon. Sections 45 and 48 of the act of 1842 and section 14 of the act of 1880, require that a true copy of the statement shall be filed in the office of the clerk of the town or city, that the original statement duly certified shall be delivered to the supervisor of the town or ward, and that a duplicate thereof shall be filed in the office of the county clerk. What statement is meant by these provisions? Evidently the whole statement, the general as well as detailed, made by the inspectors. And these statements are, by section 15 of the act of 1880, made public records, open to inspection and examination by any elector of the state. The two statements are never to be divorced, and where the one goes, the other must also go. It is thus clear, too clear, it seems to me, for reasonable doubt, that the detailed statement is part of

*the* statement and return which the inspectors of election are required to make.

The election laws applicable to the city of New York throw some light upon the meaning of the word " statement" as used in the acts of 1842 and 1880.   Section 1892 of the Consolidation Act (Chapter 410 of the Laws of 1882) contains the substance of section 42 of the act of 1842, as to attaching ballots and as to writing the numbers upon them ; and section 1895 contains the substance of section 44 of the act of 1842, in reference to what I call the general statement.   The inspectors are required to make triplicate statements of the results of the canvass and estimate, one to be delivered to the clerk of the board of aldermen, one to the county clerk and one to the chief of the bureau of elections, and all these statements must be complete, containing the attached ballots and what is written upon them.

The statement having thus been made, delivered and filed, then follows the duty of the county canvassers.   The original statements are to be placed before them by the supervisors to whom they have been delivered by the inspectors, and they are to canvass them.   Their duty is confined solely to the canvass of such statements.   They cannot go outside of or disregard them, and they are to determine what they show as to the number of votes cast for each candidate, and declare the results.   The returns placed before them containing the general and detailed statements with ballots attached are called statements, and they are *the* statements upon which they are to act.   They cannot omit a portion of any statement, but they are to consider the whole statement and base their conclusion upon that.

Now, when these canvassers came to act, they found upon the returns placed before them two sets of numbers which ought to have agreed, but did not agree.   What was their duty then ?   Clearly to send back the returns to the inspectors for correction, under the act of 1842, where it is provided that " if, upon proceeding to canvass the votes, it shall clearly appear to the canvassers that in any statement produced to them" (the word statement here evidently meaning the whole return

or statement), " certain matters are omitted in such statement which should have been inserted, or that any mistakes which are clerical merely exist, they shall cause such statement to be sent by one of their number," to the inspectors to have the same corrected, and the inspectors are to be convened and make such correction as the facts of the case require, but not change or alter any decision before made by them, only causing their canvass to be correctly stated. Under this provision of law if the canvassers find that ballots have not been attached to the returns by the inspectors, that is a case of omission, and they can send the returns back to have the omission supplied. Here the discrepancy between the two sets of numbers appears to be and was manifestly on the face of the returns the result of clerical mistakes, either in writing the numbers or in adding up figures, and the canvassers could have sent the returns back for the correction of these mistakes. The inspectors could have corrected them by resort to the tally sheets, or to their memories, or to any other facts in their possession which would enable them to make the corrections so that the two sets of numbers would correspond. But the county canvassers, as this record discloses, refused to send these returns back for correction. Assuming now that they were not absolutely bound to send them back for correction, how were they bound to canvass them? Then it was for them to determine the significance, meaning and result of the returns. If they thought one set of numbers was more reliable than the other, they could take that and base their canvass upon it. All that was written upon or in the returns constituted the statement which they were to canvass. There is certainly ground for claiming that a detailed statement made up of the numbers of each kind of the ballots, was more reliable than the general statement composed of totals reached by adding up the ballots. The general statement must have been reached by adding up the votes contained in all the ballots of every kind, and there is one chance of error, that of mistakes in addition, which is absent from the detailed statement. It was for the canvassers to determine in the case of any return which of the two statements was the most reliable

and the safest guide.   Where does the court get the power to command them absolutely to take the one statement rather than the other ?   What right has it to interfere with and control the discretion vested in the canvassers ?   If the canvassers had taken the general statements as their guide, and found the results of the election from them, it would have been quite as competent and equally erroneous for the court to have commanded them to make their canvass from the detailed statement.

If the court had commanded them to send the returns back for correction, some argument for the jurisdiction of the court could have been made, and the jurisdiction could be upheld if the canvassers were under an absolute legal duty, under the circumstances, to send them back.   Whether they were under such an absolute legal duty we need not now determine, because no such command has been issued.   The court, without any correction of the apparent mistakes, and without giving the canvassers any opportunity to have them corrected in the mode pointed out in the statute, an opportunity which they might embrace rather than canvass the general statements has absolutely commanded them to canvass the returns with these mistakes apparent upon them in a particular way disregarding an important and material portion of them.   What right has the court to command the canvassers to disregard any portion of the returns which, under severe penalties the inspectors were bound to make for the purpose of showing the results of the elections in the election districts.

Suppose the detailed statement shows that ten or a hundred ballots of the kind attached were cast at any election, while the general statement makes no mention of such ballots, what then are the canvassers to do ?   They may send the returns back for correction.   But can the court command them to make their canvass from the general statement, disregarding wholly the detailed statement showing beyond question a number of votes cast ?

There certainly can be no policy which requires greater weight to be given to the general statement than to the detailed

statement. Frauds are easier and mistakes more liable in the former than in the latter.

I do not deem it important to give particular attention to the return of the votes in the second district of the first ward of the city of Elmira. That stands upon a different footing from the other returns of inspectors. Even if the court below is right in reference to that return, its order cannot be justified.

A careful consideration of the whole case leaves upon my mind no doubt that the learned court below fell into error in its construction of the statutes. To me it appears demonstrably clear that the canvassers acted within their jurisdiction in making the canvass as they did ; and if any wrong has been done in canvassing votes, and the relator has actually received the greatest number of votes for representative in congress, he must seek his remedy in the house of representatives, the only body that can give him relief, and the public justice for violated law must be vindicated in the criminal courts.

The orders of the General and Special Terms should be reversed and the writ of mandamus denied with costs in all the courts.

All concur with O'BRIEN, J., except, EARL, J., dissenting and RUGER, Ch. J., not voting.

Order affirmed.