## In re ELECTION OF ALDERMAN OF FIRST WARD OF CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. November, 1897.)

1. ELECTIONS—RETURNS BY INSPECTORS—REFUSAL TO SIGN.
   Under General Election Law 1896, c. 909, § 111, which requires the inspectors, on completion of the canvass, to sign a statement thereof, and further providing, if any inspector shall refuse to sign any return required of him by the law, he must state the grounds upon which such refusal is based upon such return, over his signature, on the return of an order to show cause why two inspectors of election should not sign such return they could not be compelled to do so, where they had indorsed on the return their reasons for refusing.

2. SAME—CORRECTION OF CLERICAL ERROR.
   The power of the court should not be invoked to correct a clerical error in the return of an election canvass, unless the board of canvassers have or will refuse to order the board of election inspectors to make the correction.

3. SAME—POWERS OF INSPECTORS.
   The inspectors of election have no power to correct any other than clerical errors existing in the return of a canvass.

4. SAME—BOARD OF CANVASSERS.
   The board of canvassers have no power to reject any vote that comes to it certified in due form by the inspectors of election.

49 N.Y.S.—16

5. SAME—APPLICATION TO COURT.
    Where it does not clearly appear that a clerical error exists in the return of a canvass, an application to the court to have it corrected will be refused.

Application for an order to compel two of the inspectors of an election district to sign the return in the matter of the election of alderman of the First ward of the city of Buffalo, and to correct a clerical error therein. Denied.

Seward A. Simons, for petitioner.
Edward L. Jellinek, for respondents.

TITUS, J. The questions here presented arise upon the return of an order to show cause why two of the inspectors of the First district of the First ward should not sign the canvass and return the ballots at the general election held on the 2d day of November. 1897, in said election district. The facts appear in the moving papers and the return on file in the office of the city clerk. Two of the inspectors signed the return, and two, Vernon Cole and Patrick J. McGowan, refused to sign the canvass of votes with the other inspectors, but indorsed a statement of the reasons why they refused on the back of the warrant, substantially as follow:

"We, the undersigned inspectors of election for the First district of the First ward, have refused to sign the foregoing certificates, for the reason that eighteen ballots, which we have numbered 1 to 18, inclusive, and numbered said ballots accordingly by indorsing said numbers upon them, which are inclosed in the package for void ballots, we objected to as being improperly marked, and therefore void, have been counted by the other inspectors for the candidates."

It appears from the return that the whole number of ballots cast in that election district was 441, of which number 3 were rejected as void, and 3 on which no vote for the office of alderman was given, leaving 435 ballots counted for alderman, of which John White received 292, and John Sheehan received 143, so that the 18 protested ballots were counted for that office. Section 111 of the general election law requires the board of inspectors of election, on completion of the canvass, to make and sign an original statement thereof, showing the kind of election, when and where held, with a separate return for each office of the votes cast for each candidate therefor, etc.; to which shall be added a statement of the number of ballots protested and marked for identification, and of the number of void ballots rejected by them. It further provides:

"If any inspector, poll clerk or ballot clerk shall refuse to sign any return required of him by the election law, he must state the grounds upon which such refusal is based upon such return over his signature." Laws 1896, c. 909.

There is no way of determining in this proceeding whether the ballots protested and counted by two of the inspectors are void or not, as the marked ballots were not produced before the court on this hearing. But it does not seem necessary, in disposing of this question, to pass upon the validity of the marked ballots, as the court is only asked to direct the two inspectors who refused to sign the return of the canvass of ballots to sign it now. It is claimed by

the two inspectors who refused to sign the return that they cannot be compelled to sign an incorrect return, and that they have fully complied with the provisions of the statute above quoted in making a statement of the reasons for their refusal to sign the canvass on the return. No authority is cited, and probably none will be found, as a precedent to follow. It was contemplated by the legislature that cases would arise under the numerous provisions of the election law in which inspectors might fairly disagree as to what was the proper canvass of the ballots, or whether ballots had been improperly rejected or counted; and in such a case they should not be required to sign a statement of votes which to them seemed wrong, or which they could not in good conscience do, by reason of the action of the other inspectors, and a provision was very properly inserted in the law that such inspector should state and sign upon such return the grounds upon which his refusal to sign is based. I think, therefore, that Inspectors Cole and McGowan have fully complied with the requirements of the law in making and signing the ground of their refusal upon the return, and that they cannot in this proceeding be compelled by an order of the court to sign the return of the canvass with the other two inspectors.

On the argument before me the counsel for the petitioner claimed that there is a clerical error in the return, and that the court should order the two inspectors who signed the original return to correct the error. I presume the court has power, when it clearly appears that a clerical error exists, to correct it, if it is necessary to secure a correct statement of the ballots cast. People v. Board of Canvassers of Chemung Co., 126 N. Y. 392, 27 N. E. 792. But there is no suggestion in the moving papers or by counsel that the board of canvassers have or will refuse to do its duty, and order the board of election inspectors of that district to make such correction, if it clearly appears that a clerical error exists, and the power of the court should not be invoked where there is complete power in the canvassing board to do all the court is asked to do, unless something appears to indicate that that body will not order the corrections contemplated by the law to be made. Section 132 gives express power to the canvassing board to order "any merely clerical mistakes" corrected by the board of inspectors, and, if the board of canvassers fails to do its duty, section 133 provides that the court may, upon affidavit showing that fact, order such errors to be corrected. See People v. Board of Canvassers of Chemung Co., supra.

But it does not clearly appear that a clerical error has been made. The return signed by the two inspectors does not show it, and counsel for the two inspectors, who refused to sign the return on the argument, deny that a clerical error exists. In the moving affidavits one of the watchers and two of the inspectors swear that, including the protested ballots, John White had 292 votes, and John Sheehan had 140, making the total vote counted for the office of alderman 432; and in a subsequent affidavit the same two inspectors say that, exclusive of 18 protested ballots, White received 280 and Sheehan 136; and that of the protested ballots White received 12, and Sheehan 4, and 2 were blank. The return of the convassers, signed by

these two inspectors, states in detail, as required by the statute, how the ballots were distributed, namely:

(1) The number of ballots cast on which votes were counted for any candidate for office was..................................................... 438
(2) The number of ballots cast and counted on which there was no vote for the office of alderman was............................... 3
(3) The whole number of ballots on which votes were counted for alderman was....................................................... 435
(4) Of which White received........................................ 292
(5) John Sheehan received......................................... 143

—Which makes the votes received by both candidates for the office of alderman 435, corresponding with the number stated in the return, and, with the 3 ballots on which no vote was cast for alderman, a total of 438.

A like statement, evidently in the handwriting of Evoy, and signed by him and Bulger, the two inspectors who signed the return, made in the "Statement of Canvass" made pursuant to the statute, on file in the city clerk's office, shows the same distribution of the vote, namely, 292 for White, 143 for Sheehan, and 3 counted for neither, making 438 in all. The inspectors have no power, under the election law, to correct anything but clerical errors, and no power exists in the canvassing board to reject any vote that comes to it certified in due form by the inspectors of election. In re Woods, 5 Misc. Rep. 575, 26 N. Y. Supp. 169.

I have stated fully enough from the papers to show that there is not so clearly a "clerical error" as calls for action by the court to direct the inspectors to correct it; therefore, upon the ground before stated, and also on the ground that it does not clearly appear that a clerical error exists, I have concluded to deny the application of the petitioner.