(75 App. Div. 33.)

PEOPLE ex rel. CALIHAN v. HUNT, County Clerk.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. PRIMARY ELECTIONS — CERTIFICATE OF NOMINATION — ISSUANCE — COUNTY CLERK—MINISTERIAL DUTY—MANDAMUS—HEARING.

Primary Election Law, § 8, subd. 2 (Laws 1899, c. 473), provides that, on completion of the canvass by the board of primary inspectors, they shall file a statement of the result with the custodian of primary records, and subdivision 4 provides that the custodian shall deliver a certificate of nomination to any person who by the statement so filed and canvassed is shown to have been nominated. Section 11 provides that any action or neglect of any public officer with regard to any duty prescribed shall be reviewable by certiorari or mandamus, as the case may require. *Held*, that a county clerk's action in issuing or refusing to issue a certificate of nomination is purely ministerial, and based solely on the statement filed, so that on hearing of an order to a county clerk to show cause why mandamus should not issue to require him to issue a certificate of nomination, the court cannot hear affidavits to vary or contradict the statement, but can only consider the propriety of the clerk's action on the statement alone.

2. SAME—BALLOTS—NAMES—IDENTITY OF PERSON.

Merely on the statement of a board of primary inspectors that a certain number of votes were cast for "Dr. John J. Evans" and a certain number for "John Evans," and without hearing any evidence, it cannot be assumed that all the votes were intended for the same person.

Appeal from special term, Monroe county.

Mandamus by the people, on relation of Matthias J. Calihan, against Charles L. Hunt, as county clerk of Monroe county. From an order vacating an order directing the issuance of a peremptory writ (74 N. Y. Supp. 399), relator appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

William H. Driscoll and James M. E. O'Grady, for appellant.
William A. Sutherland, for respondent.

WILLIAMS, J. The order appealed from should be reversed, with costs to appellant, and the motion granted, with costs. The order vacated directed that a peremptory writ of mandamus issue, directed to the county clerk, commanding him forthwith to issue and deliver to the appellant a certificate of his nomination as alderman of the Second ward of the city of Rochester, on the Republican ticket, in accordance with the primary election held in that ward, or to show cause to the contrary at a term of the supreme court, and that the clerk issue no certificate until the termination of the order. The order ap-

pealed from was made after a hearing upon this order to show cause.
The order to show cause was based upon the affidavits of the appellant
and three other persons, with reference to the proceedings had at the
primary election in question, as to the result thereof, the statements
made by the inspectors and filed with the county clerk, and the refusal
of the clerk to issue to appellant his certificate of nomination. Upon
the hearing of the order to show cause, other affidavits were read in
behalf of appellant upon the same subjects. Affidavits were also read
upon the same subjects in opposition on the part of the respondent
and the person claiming the nomination against appellant. The re-
spondent also returned the statement filed in his office by the in-
spectors who acted at the primary election in question. The proceed-
ings were commenced under section 11 of the primary election law
(chapter 473, Laws 1899), which, among other things, provides that:

"Any action or neglect of * * * any public officer * * * with re-
gard to any right given to, or duty prescribed for any * * * officer
* * * by this act, shall be reviewable by the appropriate remedy of man-
damus or certiorari, as the case may require. In addition thereto, the su-
preme court, or a justice thereof within the judicial district * * * shall
have summary jurisdiction, upon complaint of any citizen, to review such
action or neglect."

Apparently the only authority given to the court or justice thereof
is to review the action or neglect complained of, which is in this case
that of the county clerk. It was said he should have issued a certifi-
cate of nomination to the appellant, and he neglected and refused to
do so. If it was the clerk's duty, under the law, to issue the certificate,
then the court had power, and it was its duty, to compel such action
by mandamus; otherwise not. By section 8, subd. 2, of the primary
election law, it is provided that:

"Immediately upon the completion of (the) canvass, the board of primary
inspectors in each primary district, shall make public oral proclamation of
the result thereof, and shall make a written statement of such result,
* * * and also a duplicate thereof. * * * Immediately after the com-
pletion of such statements, such board shall file the original thereof with the
custodian of primary records (the county clerk in this case, under section
2 of the law), and shall file the duplicate statement with the clerk of the
city."

And by subdivision 4 of the same section it is provided that:

"The custodian of primary records shall forthwith proceed to canvass the
statements so filed and shall * * * prepare certified statements of the
result. * * * Such custodian shall also promptly deliver, upon demand,
to any person, who by the statements so filed and canvassed is shown to
have been * * * nominated as a candidate for public office, a certificate
of such * * * nomination. Upon filing such certificate in the proper
office and at the proper time prior to election day, a person nominated for
public office at such primary election shall be entitled to have his name
printed upon the official ballot of his party. * * *"

Under these provisions, the county clerk was required to act minis-
terially, and not judicially. He could only act upon the statements filed
with him. He was to deliver to the person who, by the statement
filed and canvassed, was shown to have been nominated, a certificate
of such nomination. He could not receive or act upon any affidavits
tending to explain or vary or contradict the statement itself. Au-

thority is hardly necessary for these propositions. The rule should be the same as in the canvass of statements under the general election law. People v. Board of Canvassers, 126 N. Y. 392, 27 N. E. 792; People v. Rice, 129 N. Y. 461, 29 N. E. 358. Inasmuch as the court had power merely to review the action of the clerk, to determine whether he acted correctly in canvassing the statement filed with him, and in determining the result, and in refusing the appellant a certificate of nomination, it necessarily follows that no affidavits could be received or acted upon by the court on the hearing of the order to show cause to explain, vary, or contradict the statement canvassed by the clerk, or the result arrived at by him as to the person to whom the certificate of nomination should be delivered. The clerk acted alone on the statement canvassed. The court could only say whether he acted properly upon such statement alone. All the affidavits, therefore, used upon the hearing of the order to show cause were improperly before the court below. This was the view taken by that court, and, although in the opinion there was some consideration of the facts, the decision was made to rest in the end solely upon the question whether the clerk arrived at a proper result, acting alone upon the statement filed with him by the inspectors of the primary election. This statement was returned by the clerk, and was before the court, and it stated, in brief, that for the office of alderman in question the whole number of votes cast was 379, of which Matthias J. Calihan received 186, Dr. John J. Evans received 182, John Evans received 9, M. J. Calihan received 1, and James F. Pool received 1. The clerk credited Matthias J. Calihan with the 1 vote received for M. J. Calihan, making his total 187, and credited Dr. John J. Evans with the 9 votes received for John Evans, making his total 191, and therefore refused the certificate to Calihan, the appellant. The only question is whether legally Dr. Evans was entitled to be credited with the 9 votes received for John Evans. The court below held that he was so entitled, quoting as authority therefor from People v. Pease, 27 N. Y. 45, 84 Am. Dec. 242, as follows:

"According to well-settled rules, the board of canvassers erred in refusing to allow the relator the 19 votes given for Moses Smith and M. M. Smith, the addition of which to his unquestioned vote would have given him four majority over the defendant."

The real name was Moses M. Smith. Judge Selden cited for the proposition quoted People ex rel. Yates v. Ferguson, 8 Cow. 102, and People ex rel. Eastman v. Seaman, 5 Denio, 409. All of these cases were actions brought in the nature of quo warranto, and in all of them evidence was given outside the statements canvassed, upon which the verdict of the jury was based, tending to show that the ballots in question were intended by the voters for the relator. Thus in the Smith-Pease Case, above, it was shown that there was no other man in the county known as M. M. Smith, and that relator was accustomed in his business to sign his name as M. M. Smith. In such an action the court could go behind the statement and returns, take evidence, and ascertain the real facts, and this was done in that case, and it was held Moses M. Smith was entitled to the votes given for M. M. Smith and Moses Smith, because the facts so proven entitled

him thereto. The passage quoted from Judge Selden's opinion was therefore unnecessary to a decision of that case, and does not seem to have been supported by the cases cited. Then in the Yates-Ferguson Case, above, evidence was given tending to show that the relator, Henry Frey Yates, was known also by the name of Frey Yates and H. F. Yates, and it was determined that the relator was entitled to the votes received for Frey and H. F. Yates, because they were so intended by the voters. The court (Savage, Chief Justice) said in his opinion:

"When we permitted an information to be filed in this case, it was represented to us that the ballots containing the designation H. F. Yates were intended for the relator. The canvassers had acted upon the idea that they designated some other person. They had no means of examining witnesses or of receiving any evidence besides what was upon the ballot itself. Courts and juries are not so restricted. They possess more ample means to determine any fact which is left in uncertainty, and in my judgment the learned judge erred in applying the same rule to an investigation by a court and jury which is applicable to a tribunal who do not possess the power of examining witnesses on oath. From an inspection of the paper itself it might well be doubted whether H. F. Yates represented Henry Frey Yates, or some other Yates whose Christian name was represented by the same letters, and the canvassers, as a board, were not bound to know that no other man of the name of Yates was a candidate for the office of county clerk; but a court and jury can learn from testimony facts and circumstances which may lead to the irresistible conclusion that those votes were intended for the relator, and no other. That the relator frequently subscribed his name H. F. Yates; that he had formerly been clerk, and was then a candidate for that office; that people generally would apply those letters to the relator; and that no other person was known in the county to whom those initials were applicable,—were facts which, if proven, would justify the jury in finding that these votes were intended and given for the relator."

This case was followed in the Eastman-Seaman Case, above, where ballots given for J. R. Eastman were held to be valid ballots for John R. Eastman, upon a finding by a jury, upon evidence outside the statements canvassed, that they were so intended by the voters.

We are aware of no authority for the rule which seems to have been adopted in this case by the clerk, and approved by the court below, that the votes received for John Evans must be or might be assumed to have been intended for Dr. John J. Evans. In the absence of all evidence outside the statement by the inspectors, the clerk was not bound to assume, and he could not assume, that there was no man who was a candidate for alderman and known as John Evans besides the person whose true name was Dr. John J. Evans. He was bound to act upon the theory that the two names represented two different persons, and he had no legal right to credit Dr. John J. Evans with the nine ballots received for John Evans. His refusal, therefore, to issue the certificate of nomination to the appellant was a neglect of duty, which the court below should have remedied by the mandamus sought for.

We conclude, therefore, that the order appealed from should be reversed, with costs to the appellant, and the motion for a peremptory mandamus granted, with $10 costs. All concur.