(42 Misc. Rep. 70.)

## In re RUSH.

(Supreme Court, Special Term, New York County.   December, 1903.)

1. BOARD OF ELECTIONS—PRIMARY INSPECTORS—DUTIES.
    Under Primary Election Law, p. 990, c. 473, § 8, subd. 4, the board of elections, the custodian of primary records, has merely ministerial powers, and can only canvass the statements of a result filed with it by the board of primary inspectors.
2. SAME—RECOUNTING BALLOTS.
    The board of elections of the city of New York, having merely ministerial powers, cannot be compelled by the Supreme Court to recount ballots returned by boards of primary inspectors as void and protested, and determine whether such ballots were counted, and, if not counted, add them to the returns and canvass them.
3. SAME—POWERS OF COURT.
    Where the ballots, the statements, and boards of primary inspectors are still in existence, the Supreme Court has power, under Laws 1899, p. 995, c. 473, § 11, to review the action of such boards, and, on showing that lawful ballots have not been counted, order such a board to reconvene and obey the law.
4. SAME—PRIMARY ELECTIONS—BALLOTS.
    Under Laws 1899, p. 987, c. 473, § 8, subd. 1, void ballots at primary elections must be rejected, but protested ballots must be marked and counted.

Application of Thomas E. Rush for writ of mandamus against the board of elections and others.   Motion to vacate stay.   Granted.

Jacob Marks, for T. E. Rush.

Herbert H. Maass, for J. F. Mulqueen.

George L. Rives, Corp. Counsel, and Oliver C. Semple, Asst. Corp. Counsel, for board of elections.

CLARKE, J.   Application for a writ of mandamus requiring the board of elections, the custodian of primary records, to recount void and protested ballots in the Twenty-Ninth Assembly District, which are alleged to have been returned as void, and protested and not counted, at the Democratic primary in said district.   It is alleged that the statements filed by the boards of primary elections show that 56 ballots were returned as void and protested.   It appears that, in a proceeding already had, said ballots have been produced before this court, and examined by a justice thereof.   Mr. Justice MacLean, on said proceeding, made an order which reads:

"And the court, having investigated all of said ballots as contained in said packages, * * * and having examined the said ballots, * * * finds, as matter of fact and law, as follows:   That the whole number of void and protested ballots as returned in said packages by the board of elections is fifty-six, which said ballots were marked Exhibits 1 to 56, inclusive; that the said ballots numbered 21 and 28 are void ballots, and, if counted, should not have been counted; and that the remaining of said exhibits are good ballots, and should have been counted, if not counted."

This proceeding seeks to compel the custodian of primary records to determine whether or not said ballots were counted, and, if not counted, to add them to the returns and canvass them.   The board of elections, the custodian of primary records, has no such power, and therefore cannot be compelled to exercise it.   Its power is ministe-

rial merely. It can only canvass the statements made by the boards of primary inspectors (section 8, subd. 4, of the primary election law). People ex rel. Calihan v. Hunt, 75 App. Div. 33, 77 N. Y. Supp. 1136. The primary election law (Laws 1899, p. 968, c. 473) provides, in section 7, subd. 1 (page 970):

"No ballot which shall have any printing, writing or mark on the outside thereof, shall be received. No ballot shall be in any way marked for identi-fication."

And section 8, subd. 1 (page 987), "Canvass of Votes," provides:

"All questions touching the validity of ballots or their conformity with the provisions of this act shall be determined by a majority vote of the board of primary inspectors. * * * When a ballot is not void, and a primary election inspector or duly authorized watcher shall, during the canvass of the vote, declare his belief that any particular ballot has been written upon or marked in any way for the purpose of identification the inspectors shall write on the back of such ballot, 'Objected to because marked for identifica-tion,' and shall specify over upon such ballot to which objection is made. The votes upon each such ballot shall be counted by them as if not so ob-jected to. If any ballots shall be rejected as void, the reason for such rejec-tion shall be written on the back thereof by the chairman of the inspectors, or by an inspector designated by him. * * * A statement of the number of ballots protested as marked for identification, and of the number thereof rejected as void, shall be included in each of the statements of the result of the canvass."

It thus appears that void ballots are to be rejected; protested ballots are to be so marked, but must be counted. In my judgment, petitioner has mistaken his remedy. Every board of primary inspectors is a body entirely independent of every other board. What it did in the way of counting or not counting ballots is a question of fact. The board of elections has no power to take evidence or other-wise act than to canvass the statements. I think the court has power under section 11 (page 995) to review the action of the inspectors. They are regular election officers, appointed for a year. They will again act as primary inspectors at the coming spring primaries; 1904 being a presidential election year. Hence the boards are still in existence. Indeed, this court has already so decided in the Matter of the Second Election of the Twenty-Ninth Assembly District (86 N. Y. Supp. ——), when Mr. Justice Leventritt, in this very matter, issued an order compelling the inspectors to appear before him and properly perform their duties. I see no difficulty, upon proper pa-pers and sufficient affidavits directed against each board as to which petitioner can allege that lawful ballots have not been counted, to com-pel them to reconvene and obey the law. The statements are on file. The ballots have been preserved. The new general committee does not organize until late in December. But upon these papers no such order could be made, as there are only vague general allegations as to the whole Assembly District. The proper proceeding should be, as indicated, against the particular boards whose actions ought to be reviewed. Inasmuch as this matter has now been in the courts on sev-eral proceedings, and as in the papers reference is made incorporating all of those papers, I have looked into the facts, and find that, of the ballots in question, all have been counted for the respective parties, with the exception of 28. Of these, the ticket headed by Mr. Rush

appears to have had 15 uncounted ballots, declared by Mr. Justice MacLean to be good, Mr. Mulqueen 9, and there are 4 others of which I can find no evidence as to which they were. I omit the 2 declared bad, as, one having been counted and one not counted, they do not affect the result. Adding all of the 4 unidentified ballots to Mr. Rush's column, he would still fail of election by 5 votes. It should also be pointed out that the Second district is res adjudicata by Mr. Justice Leventritt's action. So that, if the proper proceedings should be taken, the result would not be altered—the petitioner would not obtain a certificate of election—and, when petitioner could only show an academic interest in a result, I doubt whether a court should act. On the motions before me, Mr. Rush's motion for the issuance of a writ of mandamus to the board of elections is denied. Mr. Mulqueen's motion to vacate the stay is granted. No costs.

Ordered accordingly.