(42 Misc. Rep. 567.)

PEOPLE ex rel. HAYES v. EDWARDS, Town Clerk, et al.

(Supreme Court, Special Term, Monroe County.  February, 1904.)

1. LOCAL OPTION QUESTIONS—RESUBMISSION.
    A resubmission of the four local option questions prescribed by Liquor
    Tax Law, § 16 (Laws 1896, p. 57, c. 112), will not be granted because of
    inadvertent errors of the town clerk in printing in his notice of the sub-
    mission the caption of the questions only once, and not repeating it, and
    in printing the questions on the ballot without printing the caption, where
    the notice and ballots were otherwise in proper form.

Petition by the people, on the relation of Timothy B. Hayes, to
David L. Edwards, town clerk of the town of Galen, and Patrick W.
Cullinan, as state commissioner of excise, for an order directing a spe-
cial town meeting of the town of Galen for the resubmission of the
four liquor tax questions set forth in Liquor Tax Law, § 16 (Laws
1896, p. 57, c. 112).  Motion denied.

Baker & Remington, for relator.

H. B. Exner, for town of Galen.

Francis C. Allen, for state excise commissioner.

DAVY, J.  This is a motion under section 16, c. 112, p. 57, Laws
1896, known as the "Liquor Tax Law," for an order directing a spe-
cial town meeting of the town of Galen, Wayne county, for the resub-
mission of the four liquor tax questions set forth in said section, which
the relator claims were improperly submitted to the voters at the
biennial town meeting held at said town November 3, 1903.  The
questions involved upon this motion are:  First, that the petition set
forth in the moving papers herein was not sufficient to authorize the
town clerk in proceeding thereon;  second, that the election notice
printed by the town clerk was insufficient;  third, that the ballots is-
sued and used by the electors did not conform to the requirements
of said act.

Section 16 of the liquor tax law provides that, in order to ascer-
tain the will of the qualified electors of each town, certain questions
shall be submitted at each biennial town meeting hereafter held in
any town in this state, provided the electors of the town to the num-
ber of 10 per centum of the votes cast at the next preceding general
election shall require such submission by written petition signed and
acknowledged by such electors before a notary public or other officer
authorized to take and acknowledge or administer oaths, which peti-
tion shall be filed not less than 20 days before such town meeting
with the town clerk of the town.  It appears from the motion papers
that the town clerk of the town of Galen acted upon the petition which
was filed within the time and in the manner provided by law, and
notice was given pursuant to section 16 of the liquor tax law that
the four questions provided for by said section would be submitted
to the electors of the town of Galen at the election to be held No-
vember 3, 1903.  No irregularity of the petition was urged upon the
argument, and I am unable to discover wherein it fails to comply with
the requirements of the statute.  So that the only questions involved
and urged upon this motion are whether the election notice posted

by the clerk and the ballots used at the election conformed to the provisions of section 16 of the liquor tax law. This notice which is set forth in the moving papers contains a statement of the four questions to be submitted in the exact language of the statute, except that the language of the caption, which was stated only once, was not repeated. Section 16 provides that whenever such questions are to be considered under the provisions of the liquor tax law it shall be the duty of each officer charged with the duty of preparing the official ballots for such town meeting or election to have prepared, at the time fixed by law for preparing the official ballots for such town meeting or election, the ballots required by the election law for voting upon any constitutional amendment, proposition, or question in the form of and the number required by the election law, upon the face of which shall be printed in full the said questions. The ballots used in this case were furnished by the town clerk, and were regular in form, and complied with the requirements of the statute, with the exception that the ballots did not contain the caption to the questions; but the questions were printed verbatim et literatim in the language of the statute. The different questions to be voted on were separately numbered on the ballot, and separated by a broad line one-eighth of an inch wide. Opposite and before each question so submitted were printed two square inches inclosed in ruled lines, one above the other. Preceding the upper one of such squares was printed "Yes," and preceding the lower one of such squares was printed "No." At the top of each of the ballots, immediately above the perforated line, were printed in brevier capital type the following words only:

"NOTICE TO ELECTORS. FOR AN AFFIRMATIVE VOTE UPON ANY QUESTION SUBMITTED UPON THIS BALLOT, MAKE A (X) MARK IN THE SQUARE AFTER THE WORD 'YES.' FOR A NEGATIVE VOTE. MAKE A SIMILAR MARK IN THE SQUARE FOLLOWING THE WORD 'NO.'"

It was impossible for any voter to be misled if he read the questions printed upon the ballots. The intention of the voters was clearly expressed at the polls, and admits of no doubt. Each one received his ballot from the inspectors, and marked his ballot in favor of or against granting a license to sell liquor, and returned it to the inspector, by whom it was deposited in the box, and subsequently counted; and a clear majority of the voters of the town was opposed to granting a license to any corporation, association, copartnership, or person to traffic in liquor under the liquor tax law, except as to pharmacists on a physician's prescription, which received a majority of the votes therefor. Notices were posted and public meetings were held, and the subject of license or no license was fully discussed. How, then, can it be consistently asserted that any ballot was deposited by the voter in ignorance of its contents? To hold that these ballots were invalid defeats the will of a majority of the qualified voters of the town, based upon a narrow, technical construction of the statute. It opens the door for fraud upon the innocent voters which would be far-reaching in its effects. It is not claimed that any but qualified voters voted at the election. It was conducted quietly,

honestly, and fairly, so far as the motion papers disclose, without any suggestion that the ballots did not comply fully with the requirements of the statute. To order a special election under such circumstances and for such a technical error would be doing great injustice to the innocent legal voters of the town, who were not at all responsible for the preparation and printing of the ballots. A mere inadvertent mistake of the town clerk in printing the ballots ought not to work such a harsh penalty as to defeat the will of the innocent voters, and put the town to the unnecessary expense of calling and holding a special town meeting for the express purpose of giving the defeated parties another chance at the polls. In the absence of an affirmative declaration of the statute that these ballots are void, and should not be counted, I am not willing to hold that a slight error of the town clerk in construing a doubtful provision of the statute as to how the ballots should be printed shall disfranchise a large number of voters who are not in any way responsible for the error or mistake. While the law is mandatory in the sense that it requires the town clerk in the preparation of the ballots to strictly comply with all its provisions, it is not mandatory, however, in the sense that a voter's right to cast his ballot shall be lost because some technical mistake occurs in printing the ballots. Such a construction of the statute would not only render an election invalid on account of an honest mistake in printing the ballots, but it would open the door to fraud. It would place the power in the hands of a dishonest official to defeat the will of the people at the polls. The election should not be declared invalid on the ground that the officer having charge of the printing of the ballots made an honest mistake or some slight omission in the printing of the ballots, unless they are fraudulent, or affect the results of the election, or render it uncertain. When a statute is open to construction, it should receive such an interpretation as will secure, if possible, the object of its enactment. In this case there is no claim or suggestion of fraud on the part of the town clerk or any one else, and there is no foundation for any claim that the returns do not correctly represent the will of the people as expressed at the polls. The policy of the act was to get a fair vote of the electors of the town upon the question of license or no license.

No question is raised that the canvass of the votes was not made properly. The allegations of the moving papers do not show that a different result would have followed had the acts complained of not occurred. These acts must therefore be treated as harmless irregularities, and are no grounds for the order asked for. People ex rel. Noyes v. Board of Canvassers, 126 N. Y. 392, 27 N. E. 792; People ex rel. Bradshaw v. Bidelman, 69 Hun, 596, 23 N. Y. Supp. 954; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451. The question what statutory provisions are to be regarded as directory merely has been the subject of much discussion. In the case of People v. Cook, 14 Barb. 259, Justice Mason, who delivered the opinion of the court, cites a large number of cases in which various statutory provisions have been held to be merely directory, and lays down as a rule that statutes directing the mode of proceeding of public officers are directory, and are not to be regarded as essential to the validity

of the proceedings of officers, unless it be so declared under the statute. And in a subsequent part of the same opinion he says: "And we have already seen, by reference to the adjudications, that statutes directing the mode of proceeding of public officers are regarded as directory, unless there is something in the statute itself which plainly shows a different intent." In other words, unless the only consideration of the statute shows that the Legislature intended compliance with the provisions in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely. The rule of construction to be gathered from the authorities is that irregularities are to be disregarded, unless the statute expressly declares that they shall be followed. Ignorance, inadvertence, mistake, or even intentional wrong on the part of the local authorities should not be permitted to disfranchise the voters of a town, unless the statute expressly declares that they shall be fatal to the election, or rendered doubtful as to the result. McCrary, Elections, § 227.

In People ex rel. Hirsh v. Wood, 148 N. Y. 146, 42 N. E. 537, Chief Justice Andrews said:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the willful misconduct, of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

It was held in Matter of Arnold, 32 Misc. Rep. 439, 66 N. Y. Supp. 557, that it was not a valid objection to the legality of the submission of the question of local option, when clearly distinguished upon a ballot, that the ballot contains constitutional amendments submitted to the people, nor that the local option questions were not numbered 1, 2, 3, and 4, respectively, or that question 4 was not in the words prescribed by the liquor tax law as amended. Laws 1897, p. 216, c. 312, § 9. In People ex rel. Leonard v. Hamilton, 42 App. Div. 212, 59 N. Y. Supp. 943, it was held that irregularities in the certificate of an election officer cannot be permitted to defeat the will of the electors, and that the intention of the electors is paramount thereto. The motion therefore must be denied, with $10 costs.

Motion denied, with $10 costs.