(42 App. Div. 212.)

PEOPLE ex rel. LEONARD v. HAMILTON.

(Supreme Court, Appellate Division, Fourth Department.   June 13, 1899.)

LIQUOR TAX CERTIFICATE—RIGHT OF TREASURER TO ISSUE—STATEMENT OF VOTE OF TOWN.

The right of a county treasurer to issue a certificate under the liquor tax law (Laws 1896, c. 112), authorizing the applicant to sell liquors in a town, is derived from the vote of the electors of the town; and where the town clerk has filed with the treasurer a statement of the vote, which shows that a majority of the votes cast were against the proposition under which the certificate is claimed, such statement, although not technically and strictly a "certified copy" of the return of the election, as required by section 16 of the law, is presumptively correct, and the treasurer should be governed by it.

Appeal from Monroe county court.

Application by the people, on the relation of John Leonard, for mandamus against John B. Hamilton, county treasurer of Monroe county, to compel the issuance of a liquor tax certificate.   The order directed the county treasurer of that county to issue to the relator a liquor tax certificate, unless within five days the town clerk of the town of Ogden should file with the county treasurer a certified copy of the statement of the result of the election in said town, "pursuant to section 16 of the liquor tax law, from which it shall appear that said liquor tax certificate cannot lawfully be granted; in which event the application shall be and is refused, and the writ of certiorari quashed, without costs."   Respondent appeals.   Affirmed.

The relator is a resident of the town of Ogden, in said county, and for several years prior to the commencement of this proceeding had been the owner of Cottage Hotel in said town, and engaged therein in the traffic of intoxicating liquors, in pursuance of a license duly issued to him.   After the regular town meeting held in said town in the month of March, 1899, the town clerk, on the 14th day of March, filed with the treasurer of said county a statement signed by him, of which the following is a copy, viz.:

"County of Monroe.   Statement of the Vote of the Town of Ogden on Questions Submitted on Local Option at the Annual Town Meeting Held in Said Town March 7, 1899.

Question number 1:  No. voting yes, 250;  no, 328.
Question number 2:  No. voting yes, 218;  no, 314.
Question number 3:  No. voting yes, 351;  no, 185.
Question number 4:  No. voting yes, 260;  no, 305.

"T. H. Dewey, Town Clerk."

On the 24th day of March the relator applied to the county treasurer for the certificate authorized by the liquor tax law, tendering the sum required by statute therefor, and presenting the necessary bond.   The treasurer refused to issue the certificate, on the ground that the statement aforesaid had been filed with him, apprising him that a majority of the qualified electors of the town of Ogden had voted against the granting thereof, and he indorsed upon the application of relator a copy of such statement.   The relator thereupon commenced this proceeding.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

George D. Forsyth, for appellant.
P. W. Cullinan, for respondent.

SPRING, J. Prior to the enactment of the liquor tax law, the right to determine whether liquor should be sold was left, in the towns of this state, to the electors. While the vote was not directly for or against license, the issue was always clear and definite at the town meetings, and the candidates voted for were nominated as distinctively representing the approval of, or opposition to, the granting of licenses. In practical effect local option prevailed. This submission to the will of the electors of this question was recognized as of vital importance in the towns, and had been in vogue for many years. When the liquor tax law was enacted, this principle was embodied in it as one of its salient features. The clear intention was to make the granting or withholding of certificates permitting the sale of liquor in the towns to depend upon the will of the voters, expressed upon the precise propositions submitted to them.

Section 16, c. 112, Laws 1896, prescribes the manner in which the ballots shall be prepared, and recites in detail the four propositions to be determined by the electors, the fourth of which relates solely to the selling of liquors by hotel keepers. Subdivision 4 of that section provides:

"A return of the votes so cast and counted shall be made as provided by law, and if the majority of the votes shall be in the negative on either of such questions, no corporation, association, copartnership or person shall thereafter so traffic in liquors or apply for or receive a liquor tax certificate under the subdivision or subdivisions of section eleven, upon which the majority of the votes have been cast in the negative."

By the same subdivision it is further enacted:

"A certified copy of the statement of the result of the vote, upon each of such questions submitted, shall, immediately after such submission thereof be filed by the town clerk or other officer with whom returns of town meetings are required to be filed by the election law, with the county treasurer of the county, and with the special deputy commissioner for counties containing a city of the first class, which also contains a town, and no liquor tax certificate shall thereafter be issued by such officers to any corporation, association, copartnership or person to traffic in liquor in said town under such subdivision of section eleven of this act upon which a majority of the votes may have been cast in the negative, except as otherwise provided in this act. It is further provided that in any town in which at the time this act shall become a law there is no license, it shall not be lawful for the county treasurer, or special deputy commissioner to issue any liquor tax certificate provided for by this act, until such town shall have voted upon the questions provided to be submitted by this section, and then to issue such liquor tax certificate only, as may be in accordance with the vote of a majority of the electors on the question submitted."

Section 19 of the same act requires the treasurer, after the payment of the tax and filing the necessary bond, to issue the certificate, unless a certified copy of the statement of the result, "pursuant to section sixteen," has been filed with him, showing the vote was against the issuing of the liquor tax certificate.

In section 31 there is a grouping together of the various acts constituting illegal sales of liquor under the liquor tax law, and in the category is subdivision "J," which reads as follows, viz.:

"To sell liquor in any quantity in a town in which a liquor tax certificate is prohibited under subdivisions one, two and four of section sixteen of this act, as the result of a vote upon 'questions submitted.' * * *"

It is patent that the test of the right to a liquor tax certificate, carrying with it the privilege of selling intoxicating liquors, does not rest with any officer, judicial or ministerial, but with the electors of the town. Their vote is to determine that question. After the vote has been cast, then the act provides the manner in which the result of the vote shall be imparted to the executive officer, who is to make effective the will of the majority as registered in the ballot box. The act requires the town clerk to make a statement of the result of the vote to the county treasurer. This is not for the purpose of furnishing evidence for use in the courts; it is to advise the treasurer of the result of the vote. If the return made is false, the remedies for its correction are ample, as the courts are swift to undo any inadvertence or corrupt error which tends to override the will of the majority as expressed lawfully at an election. But if the return contains the requisite information enabling the treasurer to act, then that must be his guide.

The statement made by the town clerk of the result of this town meeting unmistakably apprised the treasurer that at a town meeting held on the 7th day of March the majority of the votes cast on subdivision 4 was decisively against the question submitted, giving the precise vote for and against the proposition. While the statement so made is not technically and strictly a "certified copy" of the return of the town meeting, in literal detail, it serves the purpose of acquainting the treasurer of the result of the vote, and is adequate justification for his action. If the return is truthful in the vital part, —that is, if the statement of the result of the town meeting is correct,—then it should be upheld. As was said in People v. Wood, 148 N. Y. 147, 42 N. E. 536:

"The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly-qualified electors, and not to destroy them."

The contention of counsel for the relator that this statement should have all the verity of a certified copy to be admissible in evidence is not a fair test of its import. The right to sell liquors depends upon the vote, not upon the statement. The statement is the means provided in the act to get the information of the result of the action of the electors to the officer who is to make effective their intent. Presumptively, the statement is correct, and he must be governed by it. People v. Straight, 128 N. Y. 545, 28 N. E. 762; People v. Canvassers of Albany Co., 20 Abb. (N. C.) 19. If the election is held to be invalid, then that decision, ipso facto, annuls the certificate, however literally it complied with every formal requirement of the statute. Irregularities in the statement will not be invoked to defeat the will of the electors. This in no particular infringes upon the right of every interested party to test the validity of the election, and the existence of this right, irrespective of the statement, shows that the latter cannot be made paramount to the intention of the electors.

The detailed return of the town meeting, filed with the town clerk, contains much of no significance to this question. It could give no aid to the county treasurer. If votes have been improperly counted

or excluded, it is no concern of that official.   He cannot pass upon the conduct of the inspectors.   His sole guide is the result of the vote upon the specific questions submitted pursuant to this act.   The complete return, filed with the town clerk, is accessible to every one, and, if the election is to be impeached, that return, not the statement with the treasurer, is the foundation for it, if any inspection is desired.

In this proceeding the county judge has shown the utmost lenity to the relator.   The petition contains averments challenging the validity of the election.   With this the treasurer has nothing to do, and in his return to the writ he set forth the filing of the statement of the result of the vote, advising him it was adverse to the issuing of the certificate permitting the sale of intoxicating liquors.   The legal sufficiency of this document was the only question submitted to the county judge.   He reached the conclusion this was inadequate, but, realizing the importance of carrying out the will of the electors, he provided that the liquor tax certificate should issue, unless the town clerk within five days filed with the county treasurer the certified statement prescribed by section 16 of the liquor tax law, and, if that showed the liquor tax certificate could not be legally granted, it should be withheld.   This was entirely fair to the relator, and made the issuing of the certificate to depend, where the law intended it, upon the expressed will of the electors.   The relator, although he had assailed the validity of the election, instead of accepting the provision which provided for the certified copy conforming to the technical strictness insisted upon by him, appealed from the order.   The obvious purpose of the relator is to obtain a certificate in defiance of the will of the electors, and the courts will be loath to aid him in this endeavor.

The order of the county judge is affirmed, with $10 costs and disbursements.   All concur.