(112 App. Div. 562.)

### In re MEROW.

(Supreme Court, Appellate Division, Fourth Department.  May 2, 1906.)

1. ELECTIONS—INTOXICATING LIQUORS—LOCAL OPTION—FORM OF BALLOT—DEFECTS—EFFECT.

The Liquor Tax Law, Laws 1897, p. 216, c. 312, § 16, provides that each officer of a town charged with the duty of preparing official ballots for a local option election shall have prepared the ballots required by the election law for voting on any question, as required by the election law, and that on the face of the ballot to be voted at the town meeting shall be printed the questions submitted. Then follow questions numbered consecutively from 1 to 4, to each of which is prefixed a heading or caption, stating concisely the effect of the question. It is further provided that, if for any reason the four propositions shall not have been properly submitted, they shall be submitted at a special meeting duly called. *Held*, that the failure to print, on a local option ballot or slip placed in a voting machine, a heading or caption like those found in the section immediately preceding each question authorized to be submitted, does not invalidate an election so as to require a resubmission of the questions at a special town meeting; there being evidence showing that no elector was misled or deceived thereby.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 163; vol. 29, Cent. Dig. Intoxicating Liquors, § 42.]

2. SAME.

Nor does the failure to number the ballots or slips from 1 to 4, both inclusive, and as numbered in the Liquor Tax Law, Laws 1897, p. 216, c. 312, § 16, have such effect, in view of evidence showing that no elector was misled thereby.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 163; vol. 29, Cent. Dig. Intoxicating Liquors, § 42.]

3. SAME.

Nor does the fact that the instruction card, for voters in the use of a voting machine, failed to correctly represent the face of the voting machine, invalidate an election and require a resubmission of the question at a special town meeting, in view of evidence showing that no elector was misled thereby.

Spring and Williams, JJ., dissenting.

Appeal from Special Term, Erie County.

In the matter of the application of John Merow for an order directing a special town meeting to be held under the Liquor Tax Law, Laws 1897, p. 216, c. 312, § 16. From an order denying the application, applicant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Thomas L. Newton, for appellant.

Daniel A. Reed, for respondent excise com'r.

McLENNAN, P. J. The irregularities which occurred in submitting the local option questions at the general election and town meeting held in the town of Little Valley, county of Cattaraugus, in the year 1905, were not of such character or importance as to render such submission void and to entitle the petitioner to a resubmission of such questions at a special town meeting to be held for that purpose, as provided in section 16 of the Liquor Tax Law (Laws 1897, p. 216, c. 312). The appellant claims that there were at least eight irregularities in the

submission of those questions, but apparently only three are regarded of sufficient importance to require a decision reversing the express will of the majority of the electors, as evidenced by the number of votes cast for and against such questions. Indeed each of the other irregularities complained of affected equally the election of all the town officers and all ballots cast at such election; and, if of sufficient importance to invalidate the result as to the local option questions, a total disfranchisement of the electors of the town would logically follow. Yet we think no court would seriously consider a proposition so drastic. The alleged misleading instruction card indicating, among other things, a different arrangement of the knobs than was actually upon the voting machine, affected alike all ballots cast. The suggestions that the local option questions were printed in small type, that the voter could only remain in the booth one minute, and therefore might be unable to determine how and for what to vote, apply with equal force to the submission of the proposed constitutional amendments voted for at the election in question.

The three alleged irregularities which are urged as sufficient to authorize the annulment of the election, so far as the vote upon the local option questions is concerned, are the following: (1) The failure to print upon such local option ballot or slip placed in the voting machine a heading or caption like those found in section 16 of the liquor tax law, immediately preceding each question authorized to be submitted. (2) The failure to number such ballots or slips from 1 to 4, both inclusive, and as numbered in the liquor tax law. (3) The failure to make the instruction card correctly represent the face of the voting machine. The further discussion will be confined to those three alleged irregularities, with a view of ascertaining whether they are of such character and importance as to justify the annulment of the election, in so far as it returned an answer to the local option questions submitted. Clearly such should be the determination, if any mandatory requirement of the statute was not complied with, or if it appears that by the methods employed the voters were misled or prevented from freely answering the questions submitted to them.

We think there is no statute which requires a town clerk, the officer who by law is charged with the duty of preparing the ballots for the election of town officers and for the submission of town propositions, including the local option questions, to cause to be printed upon such ballots a heading or caption. Section 16 of the liquor tax law, so far as it relates to that matter, provides:

. "In order to ascertain the will of the qualified electors of each town, the following questions shall be submitted: * * * Question 1. Selling liquor to be drunk on the premises where sold.—Shall any * * * person be authorized to traffic in liquors * * * by selling liquors to be drunk on the premises where sold in [the town of Little Valley]?"

Then follow the other three questions which are authorized to be submitted, and each is preceded by the word "Question," by the numbers 2, 3, and 4, respectively, and by a heading or caption similar in form to that quoted above. It is claimed that by omitting to print upon the ballot such heading or caption all the votes cast for or against the same were void. Such heading or caption is no part of the question.

The words "Selling Liquors to be drunk on the premises where sold" do not constitute a question. No answer can be made to such words. The question, in each instance, distinct, concise, and complete follows such words, and it alone is required to be printed.

Section 16 of the liquor tax law provides:

"Whenever such questions [local option] are to be submitted * * * it shall be the duty of each officer charged with the duty of preparing the official ballots for such town meeting or election, to have prepared * * * the ballots required by the election law for voting upon any constitutional amendment, proposition or question in the form and of the number required by the election law, upon the face of which shall be printed in full the said questions [local option] as heretofore stated."

There is no provision in the election law which requires headings or captions on the ballots for voting upon proposed constitutional amendments, and none were added to the ballots for the seven proposed constitutional amendments voted for at the election in question. In that respect the ballots for the local option questions and for the proposed constitutional amendments were identical, and, as it seems to me, in strict compliance with the requirements of the statute. It may be that, if the headings or captions had been added to the ballots in question, the voters could have more readily identified any particular question, but evidently the Legislature did not deem it of sufficient importance to make it one of the requirements of the statute. Indeed, if the Legislature deemed it proper that proposed amendments to the Constitution should be submitted without such headings or captions, it would be difficult to conceive of any good reason why such would be required in the submission of local option questions. These questions, and the proposed amendments to the Constitution, were printed in apparently the same type (as we judge from careful inspection of the photographic exhibit attached to the record). The electors had precisely the same opportunity to ascertain the contents of the ballots for each. The proposed constitutional amendments were certainly as important as the questions submitted, and all the suggestions to the effect that the ballots were printed in small type, that the voters could remain in the booth only one minute, apply with equal force to the proposed amendments. But there is not the slightest evidence in the record that either the local option questions or the proposed amendments were printed in small type, and there is no claim by the petitioner that such questions as printed were not entirely legible, easily read, or that any voter experienced any difficulty in reading and ascertaining the contents of the same.

The statute (section 167 of the election law [Laws 1899, p. 946, c. 466]) prescribes in the following language the ballots to be used in voting machines duly authorized to be used in this state:

"All ballots shall be printed in black ink on clear, white material of such size as will fit the ballot frame, and in plain, clear type as the space will reasonably permit. * * *"

No other direction or requirement is to be found relating to the form of the ballots to be used in voting machines, and this provision applies to all ballots to be voted. It nowhere appears that this provision was violated in the preparation of any of the ballots voted at the election

in question, and the question of color of material and ink used, or plainness, clearness, or size of type employed in the preparation of the ballots for the election in question, was not raised by the petitioner on his application at Special Term nor on the appeal in this court. Neither is there any statutory requirement which, in express terms at least, makes it the duty of a town clerk, in preparing ballots for the submission of local option questions, to number the same from 1 to 4 both inclusive. In the case at bar, if such alleged requirement had been followed, it necessarily would have caused confusion, for then, upon the face of the voting machine, there would have been a duplication of such numbers. The first series of numbers from 1 to 4, relating to the first four proposed constitutional amendments to be voted on, and the second series relating to the local option questions, would have been identical, and therefore such numbering would not have aided in identifying either. As arranged, the ballot for the first proposed constitutional amendment put in the machine was numbered 1, the next 2, etc. We think it cannot be claimed that it was the intention of the Legislature to require the ballots for the local option questions upon the same machine to be numbered in precisely the same manner, especially so when it is evident that such course must tend, if it had any effect, to deceive, mislead, and confuse the elector.

The objection that the instruction card did not in all respects correctly represent the face of the voting machine is apparently not regarded of sufficient importance to have rendered the result of the election void so far as the local option questions are concerned. But it is urged that such defect, taken in connection with the others referred to, establishes the proposition that the electors were deceived and misled to such extent as that there should be a resubmission of those questions.

The moving papers wholly fail to show that any elector was so misled or deceived. It is not shown that each voter did not have full and free opportunity to enter the voting booth, that he could not, or as matter of fact did not, read and fully understand each question printed upon the local option ballots as well as upon the ballots for the proposed constitutional amendments and the names of the candidates for office printed upon the other ballots placed in the voting machine. Neither is there any allegation that any elector was prevented or experienced difficulty in locating the local option ballots upon the machine, or in properly identifying each. Indeed the number of votes cast very conclusively indicates that there was a very free expression of the electors upon those questions. It appears, as stated in the affidavit of Mr. Champlin, who is president of one of the largest manufacturing establishments in Little Valley, that he was present at such election, "was present practically all day in the room where such machine stood, and that such front and such license propositions thereon were in full, plain view for a space after each voter left the machine; that at no time on that day were said propositions misplaced on said machine up to 5 o'clock; * * * that said machine appeared to be in perfect order in all its parts, and he heard no complaint or suggestions from any one that it was not working satisfactorily and in a manner to record the will of any voter operating it during the entire day."

Harlan D. Bryant, one of the inspectors of election, deposes that he was present the entire day in the discharge of his duty as inspector, and that he observed "the workings of said voting machine. That he heard no complaint, and observed no trouble with its operation at any time, except that several voters, four or five, had to be assisted as the law provides by reason of physical infirmity of the voters. That no suggestion was made by anybody that came to deponent's knowledge that the propositions to be voted on upon the excise question, or any other question, were misplaced on said machine, or that there was any difficulty experienced by any voter in voting as he desired upon those propositions, or that he failed to do so after attempting it. * * * The face of the machine was well lighted and perfectly visible all day. That deponent's position on the whole of said day was almost directly in front of it, and he was within six feet of the front of the machine all day long. That he many times during the day observed the face of the machine. That there was no displacement of the propositions upon the excise questions, and they remained all day in the position in which they were when the machine was set up and voting begun. * * * That from the time when the polls opened in the morning the face of the machine was perfectly illuminated both by an incandescent electric light properly placed for that purpose, and also by a lantern hung inside the curtains in front of the face of the machine, and at no time from the time the polls opened until they closed was such lighting neglected; nor was there any time when the face of the machine was not well lighted, so that anybody could plainly read all there was upon it."

It appears by the affidavit of James H. Wilson, who for the last five years has been supervisor of the town of Little Valley, that he was present on election day, saw the machine in operation; in substance, that it worked smoothly, and that no complaint was made by any voter so far as he knew.

It appears by the affidavit of Henry Bramer that he was employed from the 1st day of November until the day of election to instruct voters how to operate the machine and how to vote upon the local option questions, by the use of a dummy machine set up for that purpose; that the ballots so arranged upon such dummy corresponded with the ballots as arranged upon the voting machine used; and that any elector of the town who so desired was given full and accurate instructions by him as to how to vote upon the local option questions.

George W. Korn says that he was present and voted; "that everything upon the face of said machine including said propositions was perfectly and easily readable, and he had no difficulty in voting as he desired to vote for any candidate or upon any proposition."

John J. Sullivan states in an affidavit made by him that "he was one of the board of election inspectors having charge of the election; * * * that with the exception of about one-half hour for lunch deponent was at all times present at the polling place; * * * that deponent observed the working in said voting machine during the entire day while he was present; that there was no time and from no individual any complaint or suggestion that such machine was not in perfect working order. * * * Deponent further says that from the time

and before the time of the opening of the polls on election day the face of the machine voted upon was well and perfectly illuminated both by an electric light so placed as to light the front of the machine in the best possible manner and only a short distance therefrom, and also by a lantern hung in front of said machine within the curtains so that there could be no question about the perfect lighting of the face of the machine, and at no time during election day was, there any complaint or suggestion on the part of any voter who voted in said machine that the same was not properly lighted, or that he was unable to read anything appearing upon the face of the machine; that great pains was taken by the election board to see that this was done, and the claim now made that said machine was not lighted perfectly is without foundation in fact. * * * That deponent did not hear on election day, and does not believe, that any voter who voted at said election failed to vote as he designed to vote upon any proposition or for any candidate, and on election day no claim was made by anybody to the knowledge of deponent that any man had failed to register his vote in accordance with his wishes, or that he had any difficulty in so doing by reason of any defect or trouble or by reason of any arrangement of propositions upon the machine."

We think the very great weight of the evidence is in favor of the proposition that no elector was misled by reason of the irregularities complained of, or that he was prevented from freely expressing his will at the polls. It seems to me manifest that, if there had been difficulty in that regard, some voter, during the entire day and while the election was in progress, would have made complaint. There was a contest upon the question of local option. It created intense interest in the town. Indeed, while the whole number of electors who voted was 493, 411 voted on the local option question first upon the machine and which is the vote of which the petitioner complains; and the result shows a surprising similarity in the number of affirmative votes cast. On question No. 1 there were 187; on No. 12, 187; on No. 13, 180; and on No. 14, the pharmacy question, 178. These figures indicate that those in favor of no license voted practically in the same way upon each of the propositions except the last, and that their votes were accurately recorded.

The whole complaint of the petitioner is based upon technicalities, the alleged failure to comply with some provision of the statute rather than of substance, and not because the electors were misled or deceived or prevented from freely expressing their will upon the questions submitted to them. Such irregularities should not be seized upon to defeat and thwart the will of the electors when it is clearly demonstrated that they did not affect the result or in the least interfere with the exercise of the right of any elector to vote as he saw fit upon the questions submitted.

We think the rule is correctly stated in the case of People ex rel. Hayes v. Edwards, 42 Misc. Rep. 567, 87 N. Y. Supp. 618, by Mr. Justice Davy:

"The election should not be declared invalid upon the ground that the officer having charge of the printing of the ballots made an honest mistake or some slight omission in the printing of the ballots, unless they are fraudulent or affect the results of the election or render it uncertain."

In one of the earliest cases decided by the Court of Appeals of this state (People v. Cook. 8 N. Y. 67–86, 59 Am. Dec. 451), it was said:

"The defendant, failing to show the return false, seeks to reject it altogether, on account of the noncompliance by the inspectors with some of the provisions of the election laws. There are various duties enjoined by law on the inspectors,. the great objects of which are: (1) To afford to every citizen, having a constitutional right to vote, an opportunity to exercise that right; (2) To prevent every one deprived of that right from voting; (3) To conduct the election in such a manner, in point of form, that the true number of legal votes can be ascertained with certainty. If all these objects be accomplished. as they seem to have been in this case, to reject the whole poll, because the inspectors failed to comply with every prescribed regulation, would be, as well remarked by one of the judges in the court below, to place a higher value on the statute regulation than on the right itself. It would be a sacrifice of substance to form."

In a later case decided by the Court of Appeals, People ex rel. Hirsh v. Wood, 148 N. Y. 142, 146, 42 N. E. 536, 537, it is said:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud. and not by technical obstructions to make the right of voting insecure and difficult."

In People ex rel. Leonard v. Hamilton, 42 App. Div. 212, 59 N. Y. Supp. 943, it is said:

"Irregularities in the statement will not be invoked to defeat the will of the electors. This in no particular infringes upon the right of every interested party to test the validity of the election, and the existence of this right, irrespective of the statement, shows that the latter cannot be made paramount to the intention of the electors."

Upon the authority of the cases referred to—and many more might be cited to the same effect—we think it ought not to be held, under the facts disclosed by the record in this case, that the election in question, so far as it relates to the local option questions, should be declared void. There was a fair contest upon those questions. No one complained of the manner in which it was being conducted while it was in progress. Every one was satisfied until the result was declared, and the defeated party then for the first time makes complaint and seeks to have a new election and another opportunity to compel the people of the town of Little Valley to have the saloon or barroom forced upon them against the will of the majority. And it is sought thus to thwart the express will of the electors solely because of the alleged noncompliance of the election officers with some technical requirement of the statute, and not because the result was affected thereby, or because any elector was prevented from voting as he desired.

We conclude that no mandatory requirement of the statute necessary to a valid election was omitted; that the will of every elector was expressed and recorded as by him intended; and therefore that the order appealed from should be affirmed, with costs.

Order affirmed, with costs. All concur, except SPRING and WILLIAMS, JJ., who dissent.

KRUSE, J. (concurring).   I concur in the opinion of the Presiding Justice, save in one respect.   I think the ballot should have contained the numbering and heading as the questions stated in section 16 of the liquor tax law (Laws 1897, p. 216, c. 312), but the omission of the election officers to furnish ballots of that description did not of itself invalidate the election, and is not sufficient to warrant ordering a new election, in view of the fact that the voters were not misled and the election affected thereby.

SPRING, J. (dissenting).   The notices and requirements prescribed by the statute antecedent to the election and designed to obtain a submission of the four local option questions to the electors of the town of Little Valley were complied with.   The defects which it is claimed rendered the election illegal arose chiefly out of the failure to meet the obligations pertaining to the submission of the questions on election day.   Several irregularities are complained of which I deem unimportant on this appeal, in that they are only technical departures from the strict letter of the law, or else they have been determined adversely to the appellant upon conflicting facts.   I think, therefore, that they did not deceive the elector or prevent the registering of his vote in the way designed by him, and that is the aim always to be attained.

The United States Standard voting machine was in use at this election.   Instruction cards were posted conspicuously by the inspectors purporting to display the front of the machine and intended to advise the elector of the method of its use.   The pictorial illustrations were not on the machine used at this election, but represented one of a different type.   The tickets on the machine in the booth were placed horizontally with the party knobs arranged at the left side of the machine and extending along in a straight line under each other, and the spaces for questions were at the top, and the pointers as well.   In the machine illustrated on the instruction cards the knobs extended perpendicularly from the top to the bottom of the machine, and the pointers also followed down through to the bottom of the ballot; one being opposite each name or question.   The "Questions" were also denoted in a perpendicular row at the right of the ballot.

Section 173 of the election law (Laws 1899, p. 947, c. 466, as amended by Laws 1901, p. 1311, c. 530) requires the inspectors to cause two instruction cards "to be posted conspicuously within the polling place." The object of this requirement is to enlighten and instruct the voter in the use of the mechanism of the machine which is to register his vote.   The time he may spend in the booth is limited to one minute (section 175 of the election law [Laws 1899, p. 948, c. 466]), and with the natural timidity of the average elector it is important that he learn the method of its operation before he attempts to vote.   In the present instance the instruction cards did not teach correctly, but tended to confuse and mystify the elector.   But there are one or two other violations of the statute enacted to insure the honest expression of the elector's wish, which I believe tended to mislead him, and upon which I mainly rest my dissent.   Section 16 of the liquor tax law (Laws

1897, p. 216, c. 312), prescribes the four questions which are to be submitted to the electors of a town in order that they may "determine whether liquors shall be sold under the provisions of this act." The questions are numbered in numerical order from 1 to 4, and each contains a caption of a brief sentence in clear phraseology indicating the precise proposition explained at length in the question following the caption. To illustrate, the form of No. 4 is: "Question 4. Selling liquor by hotel keepers only." This heading is intended to rivet the attention of the voter to the exact import of the question, and thus prevent any misconception of its meaning.

The town election in Little Valley in November was held concurrently with the state election. The ballots for the various state tickets, and the constitutional amendments, were provided by the county clerk and transmitted to the town clerk of Little Valley. It then became the duty of that official to provide the ballots for the town propositions, including those relating to excise conformably to the petition filed with him. Laws 1902, p. 1024, c. 405; Matter of Rice, 95 App. Div. 28, 88 N. Y. Supp. 512. At the top of the ballots furnished by the county clerk, extending from left to right as the voter faced the machine, were the constitutional questions numbered from 1 to 7 inclusive; and at the left of this row was the word "Questions." After No. 7 was a blank space sufficient for the numbers 8, 9, and 10. Immediately following No. 10 in the frame were placed by the town clerk the four excise questions not numbered, as provided in the statute, but 11, 12, 13, and 14 following in sequence the numbering upon the ballot, as provided by the county clerk. The word "Question" did not immediately precede each excise proposition, and the caption prescribed in the statute, and which succinctly stated the pith of the proposition, was omitted. The long involved interrogative sentence containing in detail the question was upon the ballot. There was nothing in this frame or above it to denote whether any of these questions pertained to constitutional amendments, town propositions relative to the raising of money, or the excise questions, except as the voter may have gathered this information necessary to enable him to vote intelligently by reading through each long sentence defining the proposition. No. 14, which was designed to cover No. 4 of the excise propositions, contained eight lines. The voter, in the time allotted to him, would hardly be able to accomplish the feat of reading these sentences. If he depended for information upon the ballot as it appeared in the machine, he probably would not have acquired it at all. Again, there was no caption or number to indicate the order in which the excise propositions were placed in the machine. For aught the electors may have known, the order prescribed in the statute was not observed.

In order that the confusion may appear, which may have befallen the elector as I view the case, I recapitulate the situation. The first in the order of events, the voter looked at the cards provided for his instruction and which were conspicuously posted, printed in large type, and easily legible. He had fixed in his mind the location of the knobs relative to the various tickets. He entered the booth expecting to find the knobs at the top of the ballot. They were not as

advertised for his enlightenment, but at the left side as he faced the machine. The questions which were agitating the public mind, and for or against which he may have intended to have his vote recorded, he understood were in a column at the right of the ballot. When inside, he found they were not as placed on the instruction cards, and may or may not have discovered they were all in a horizontal line at the top of the ballot. If especially interested in the excise propositions, he must, before entering the booth, have learned that they were numbered from 1 to 4, each preceded by the word "Question," and that a caption was at the head of each question which he comprehended and which was the keynote to the proposition impressed upon his mind. With the misdirection in the ballots by reason of the instruction cards, followed by this marked deviation from the plain wording of section 16 of the liquor tax law, defining the form of the questions, it certainly is not unreasonable to infer that the electors may have failed to vote as they desired on these four propositions.

It is suggested that the voting machine was in plain view of the electors, and that they could see its operation. It was only in his sight when the curtain was drawn back, which was when the booth was unoccupied. Access to the machine by the elector was shut off, except when he voted, and the machine was some distance from him. Section 174 of the election law (Laws 1899, p. 948, c. 466). It would be difficult for him to read the headings of the propositions when outside of the rail, even if the curtain were drawn back. He was not expected to remain at the polling place for any length of time. He had only one errand, and that was to vote.

I appreciate that the failure to comply literally with every requirement governing any election should not be seized hold of for the purpose of ordering a new submission to the electors of the propositions voted upon. A substantial compliance only is essential. Unimportant deviations ought not to invalidate the election. But the purpose of an election is to afford an easy opportunity for every elector to cast his vote as he desires, and then to have it honestly counted. In recent years the Legislature in its wisdom has made many changes in the manner of voting. These new methods are useful in preventing the purchase of votes and insuring secrecy to the voter in casting his ballot. The changes are radical and add to the complexity of the system. The electorate is composed of the vigorous and the infirm, the educated and the illiterate, and any method should be readily within the compass of every voter. The elector tries to master these frequent alterations, for he is jealous of exercising the voting privilege which is the important attribute of his citizenship. He cannot acquire the minute details, but he does inform himself as to the essentials requisite to enable him to perform his obligations as a citizen. Only once in a year is he expected to furnish up his knowledge, and the very infrequency of the elections tends to cause a lapse in his mind of these requirements. A machine of involved mechanism is provided, and while that system in a measure assures secrecy and accuracy in recording the vote, yet it does tend to confuse the voter. unless before he enters the booth he has a mental picture of the mode

of operating the machine and of the location of the various tickets and propositions which compose the modern ballot. Even the most learned bungle in attempting to operate the machine. In order to render the method within the comprehension of every one, the Legislature has enacted definite requirements easily followed.

In the towns the excise propositions often arouse the most intense interest. Evidently that was true at the election at Little Valley, for on No. 4 of the excise propositions 364 votes were recorded, and the majority against the propositions was only 8. With the confusion that is likely to arise, it is important that those in charge of an election should fairly comply with the provisions of the law which enable a voter to comprehend the various tickets and propositions upon which he may desire to vote. That was not observed in the present instance. The manner in which these propositions were placed in the machine with the significant features decapitated, and with the confusing numbers in lieu of those mentioned in the statute, may well justify the claim that the elector either refrained from voting at all or else was misled.

But it is urged with much vigor that there is nothing in the record to indicate that any elector was deceived by this marked departure from the statute, and that affidavits should have been presented showing affirmatively that harm resulted therefrom. The aim of every voting statute is to insure secrecy to the voter. He is not called upon to reveal how he voted upon any proposition. He is loath to make if they failed to comprehend and vote understandingly upon each this disclosure and may be unable to do so. It would be a bad precedent to invite men to poll the electors after an election to ascertain proposition or ticket in the machine. To confess want of comprehension is a confession of ignorance in the mind of the average voter. We might as well permit the attorney for the defeated party in an action at law to obtain the affidavit of each juror, setting forth just how he arrived at the verdict, and whether it was entirely acceptable to him.

In the Matter of Town of La Fayette, 105 App. Div. 25, 93 N. Y. Supp. 534, there was up for review in this court the effect of the omission of the town clerk to give the 10 days' notice of the submission of the excise propositions, as required in section 16 of the liquor tax law. The argument was then urged that no harm was done by the omission. In commenting upon that suggestion, this court said, at page 31 of 105 App. Div., page 539, 93 N. Y. Supp.:

"It is not a question of disfranchising voters by reason of the neglect of duty of the town clerk, and we think it a dangerous rule to lay down that the town clerk may neglect to give the notice required by the plain and express terms of the statute, and then the submission be upheld in the discretion of the court upon affidavits tending to show that really no harm or wrong was done, and that the result would not be likely to be changed by a resubmission. The rights of the parties—on the one side the people, and on the other the liquor dealers—should not be made dependent on the discretionary determination of a court upon affidavits, when the statute has provided for a determination of such rights by ballot."

If there has been a violation of the requirements of the election law which it is quite evident was calculated to mislead the elector,

a resubmission to the voters might well be ordered; and that principle has prevailed in the decision of the courts. Matter of O'Hara, 63 App. Div. 512, 71 N. Y. Supp. 613; People ex rel. Caffrey v. Mosso, 30 Misc. Rep. 164, 63 N. Y. Supp. 588; Matter of Munson, 95 App. Div. 23, 88 N. Y. Supp. 509.

But it is contended that the word "Question" and the caption are not a part of the ballot. The form of the question is prescribed with great particularity in section 16 of the liquor tax law, and the caption is important, in that it groups in a terse sentence the gist of the proposition. It is to that which the elector will glance for his information, and not the elaborate interrogative query following. This caption is made a vital part of the question. It was not intended that the most helpful portion of the proposition should be eliminated, and the voter be obliged to worry through the long inquiry which succeeds. The word "question," in legal definition, does not necessarily mean an interrogative inquiry. It is a proposition, "something in controversy, or which may be the subject of controversy." Bouvier's Law Dictionary. The proposition submitted to the voters by question 4 of the liquor tax law is that of "selling liquor by hotel keepers only," which is the caption provided by the Legislature and amplified by the interrogative sentence.

It is said no caption preceded the constitutional amendments. The statute prescribes none. The vote on each of these amendments was very light throughout the state last year, notwithstanding the agitation and apparent interest manifested in them prior to the election. It was a matter of general comment after the election that the chief reason for the small vote was that the electors were confused as to the form of the ballot. Had there been a catch phrase preceding each proposed amendment directing attention to its import, certainly the voter would have been much aided in comprehending the question. The duplication of the numbers 1, 2, 3, and 4 would not have been misleading, for they were in each instance in the proper ballot preceded by the word "Question," which was not the case in any of the proposed amendments. Duplication of numbers is frequent in every ballot. The distinction between the situation pertaining to the form of the ballots submitting the constitutional amendments and those pursuant to the liquor tax law is that in the former no law was violated, while in the latter the express terms of the statute in an important feature were disregarded. It seems to be conceded that the law was not observed in the form of these ballots, but it narrows down to the proposition that their misleading purport must be determined upon affidavits; that is, the secrecy in casting the ballot, so long an influencing factor in our election laws, is to be cast aside, and every elector may be subjected to the prying attack of the affidavit maker in order that it may be publicly known how he voted, and if understandingly. The uncertainty likely to result from that course would "thwart" the will of the people. This is not a case of the disfranchisement of electors. The Legislature in providing for the submission of these questions to the electors of a town did not leave the review of the determination to the requirements contained in the general election law; but section 16

of the liquor tax law provides for a resubmission, in case the propositions "shall not have been properly submitted."

Some aid is sought to be found to sustain the election by general expressions contained in the opinions in election cases. In People ex rel. Hirsh v. Wood, 148 N. Y. 142, 42 N. E. 536, the court reviewed an "effort　\*　\*　\* to disfranchise innocent voters," on the ground that their ballots were marked. There was no claim of any misleading of the voters, or that they failed to appreciate how they were voting. The court used this language: "The intention of the voters. is clear and admits of no doubt," and its statement that "the object of elections is to ascertain the popular will, and not to thwart it," is the essence of the suffrage privilege. If, however, it was reasonably probable that the electors were misled and their will "thwarted," an easy method of remedying that evil is provided in the liquor tax law, so far as the local option questions are concerned.

In People ex rel. Leonard v. Hamilton, 42 App. Div. 212, 59 N. Y. Supp. 943, the vote was decisively against the question 4 submitted pursuant to the liquor tax law. The statement of the result filed with the county treasurer correctly registered the vote, but it was not technically "a certified copy of the statement of the result of the vote." Section 16. The relator, a hotel keeper, applied for the certificate permitting him to traffic in liquors in his hotel, which the treasurer refused to issue, and a proceeding was commenced to require him to do so, on the assumption that no proper statement of the result of the vote had been filed. The validity of the election was not in any way involved. Each of the other cases cited is far and away from the principle involved in the present case.

The determination of these local option questions rests with the electors of the town. Their decision, expressed as the law directs, should, of course, prevail. If, however, it appears without controversy that there were departures in important particulars from the plain mandates of the statute, and the deduction may very reasonably be ascertained that the will of the electors was not registered, a new election should be ordered. It is better that the propositions should be resubmitted than to have the belief prevalent among a large number of people that the will of a majority of the voters was thwarted, even though that belief is incorrect, and the integrity of the officials is not attacked. In this case there was a clear disregard of important provisions of the law intended to aid the voter, and I think a resubmission to the electors should be ordered.

The order should be reversed, with $10 costs, and the prayer of the petitioner granted, and a special town meeting ordered, at which should be resubmitted the four excise questions pursuant to section 16 of the liquor tax law.

WILLIAMS, J., concurs.