JOHN L. TRAIN, Plaintiff, *v.* ANTHONY V. SISTI, JR., as City Clerk of the City of Utica, and Others, Defendants.

Supreme Court, Oneida County, December 28, 1932.

*Leo O. Coupe,* for the plaintiff.

*J. Herbert Gilroy, Corporation Counsel,* for defendants Sisti and City of Utica.

*Harry N. Harrington, County Attorney of Oneida County,* for defendant Wenzel.

*Frank J. Baker* and *Warnick J. Kernan, amicus curiæ.*

DOWLING, J. In 1908 Utica became a city of the second class and since then has functioned under the Second Class Cities Law.

In 1913 the Legislature of New York State passed an " act to authorize a city of the second or third class to adopt a simplified form of government," known as " The Optional City Government Law." This act became a law April 16, 1914, with the approval of the Governor, and is chapter 444 of the Session Laws of 1914. This statute provides for the adoption, by cities of the second and third class, of a form of government under any one of the following plans:

(a) Government by limited council, with a division of administrative duties.

(b) Government by limited council, with collective supervision.

(c) Government by limited council, with appointive city manager.

(d) Legislative department consisting of five councilmen.

(e) Legislative department consisting of nine councilmen.

(f) Legislative department consisting of councilmen elected by district.

(g) Adoption by third class cities of the Second Class Cities Law.

For many years a substantial percentage of the people of Utica have felt that the plan of government provided by the Second Class Cities Law is cumbersome, expensive and archaic. The local papers, frequently, have voiced this sentiment and have advocated the adoption of one of the above simplified forms. In 1931 such a movement was begun. Hon. Frank J. Baker, a former mayor of the city, was drafted to head it. A petition, in the following language: " *To the Common Council of the City of Utica, N. Y.: We, the undersigned, qualified electors of this City, respectfully petition your honorable body to cause to be submitted to a vote the following question: Shall the City of Utica adopt the simplified form of Government defined as Plan ' C ' and consisting of Government by limited council with City Manager, according to the provisions of Chapter 444 of the Laws of 1914, known as the Optional City Government Law?* " was circulated, signed and executed by 2,539 qualified electors of Utica. It was presented to the common council, by filing it with the city clerk, August 5, 1931. August 8, 1931, City Clerk Anthony Sisti, Jr., transmitted by mail to the defendant Fred E. Wenzel, county clerk of Oneida county, as commissioner of elections of Oneida county, the following communication:

" *August 8, 1931.*

" Mr. FRED E. WENZEL, *County Clerk*,
    " Court House,
        " Utica, N. Y.

" DEAR SIR: Pursuant to the provisions of law, I beg to certify that a petition containing Twenty-five hundred and thirty-nine signatures was filed with me on August 5, 1931.

" Said petition provides that the following question be submitted to the electors: ' Shall the City of Utica, N. Y., adopt the simplified form of Government defined as Plan " C " and consisting of " Government by limited council, with city manager " according to the provisions of Chapter 444 of the Laws of 1914, known as " the Optional City Government Law." '

" Section 18 of Article 2 of the Unconsolidated Laws governs the submission of this question at the next General City Election.

        " Very truly yours,
            " ANTHONY SISTI, JR.
                " *City Clerk.*"

Here the activity of the city clerk ceased. The county clerk, as commissioner of elections of Oneida county, oblivious of the

statutory requirements hereinafter mentioned, caused the above question to be placed informally upon the ballot, in the city of Utica, at the general election in the fall of 1931, as " Local Proposition No. 7," although there were no other " local propositions " on said ballot.

The merits of the " question " were widely discussed in the press, and, to some extent, upon the platform, during the ensuing campaign.

At the general election in Utica, November 3, 1931, 39,730 electors attended the polls and voted. 12,574 voted " yes " and 10,910 voted " no " on said " question." It was carried by a majority of 1,664. 16,246 of said electors failed to vote on said question.

Following said election, Leon J. A. Collis and wife instituted an action against Anthony Sisti, Jr., as clerk of the city of Utica, and the city of Utica demanding an injunction restraining the said defendants from any act tending to give effect to said election. They procured a temporary restraining order, pending the action, restraining the defendants " from the performance of any act in pursuance of said election of Nov. 3, 1931, and from any act in pursuance of any provision of Chapter 444 of the Laws of 1914, and from holding any election of officers under said Act, and from taking any steps toward holding any such election." This suit was subsequently discontinued and the restraining order was vacated.

Subsequent to the vacating of said restraining order, the city clerk did not certify the record of said election to the Secretary of State.

On October 1, 1932, plaintiff, a duly qualified taxpayer, instituted this action seeking the following relief:

1. That plan C, provided for by chapter 444, Laws of 1914, be declared never to have been legally adopted by the city of Utica.

2. That the failure of the county clerk to publish notice of election and of the submission of the " Question " invalidated the election of November 3, 1931, so far as the adoption of " Plan C " is concerned.

3. That the failure of the city clerk to transmit a certified copy of the petition to the county clerk and to post notices of the submission of the " Question " invalidated the election of November 3, 1931, so far as the adoption of " Plan C " is concerned.

4. That the printing of the " Question " on the official ballot and on the voting machines and its position, type and wording " be declared to be invalid."

5. That chapter 444, Laws of 1914, is unconstitutional and

that the Home Rule Amendment in 1923, repealed and superseded said act of 1914.

Defendant Wenzel admits that he did not publish notice of the submission of said question to the voters of the city of Utica. He alleges that, inasmuch as the election of 1931, was a general city election, he was not required to publish such notice.

Defendants Sisti and city of Utica deny it was necessary to post notices of the submission of said question in four public places in the city of Utica, or that it was necessary for the defendant Wenzel to publish notice of the submission of said question at the general election of 1931 in the city of Utica.

Defendants Sisti and city of Utica demand judgment as follows: " Wherefore, the defendants, Anthony V. Sisti, Jr., as City Clerk of the City of Utica, and The City of Utica, demand judgment and a declaration by the Court of the status of the government of the City of Utica so far as the validity or invalidity of the election at which said question was submitted to a vote of the electors of said city, and that they have such other and further order and relief in the premises as may be just and proper."

Defendant Wenzel demands judgment: " That the complaint herein be dismissed."

Section 15 of article 2 of chapter 444 of the Laws of 1914 provides that the petition for a change of government to one of the authorized plans may be presented to the common council of any second class city at any time by filing the same with the city clerk.

Section 16 of said article prescribes the form of such petition as follows:

" *To the Common Council of the City of* ————:

" We, the undersigned, qualified electors of this city, respectfully petition your honorable body to cause to be submitted to a vote the following question: Shall the City of ———— adopt the simplified form of government defined as plan (insert A, B, C, D, E, F, or G, as desired by the petitioners) and consisting of (describe particular plan briefly, as ' government by limited council with division of administrative duties ' or ' government by limited council, with city manager ' or ' government by separate legislative and executive departments with five councilmen elected at large,' etc.) according to the provision of Chapter —— of the Laws of (insert chapter number and year of passage of this act), known as ' the optional city government law.' "

Section 18 of said article provides:

" Submission of question at general city election. Within five days after the petition shall have been filed with him, *the city clerk shall transmit a certified copy thereof to the commissioner of elections*

(except that the signatures upon the petition, and the acknowledgment or proof thereof need not be copied, but in place thereof the city clerk shall state the number of signatures of electors thereon). If the petition shall have been filed with the city clerk * * * not more than three months and not less than one month prior to a general city election the commissioner of elections shall cause the question or questions proposed by the petition to be duly submitted to a vote of the electors of the city at such general city election."

Section 20 of said article provides: " *Publication of notice and conduct of election. The city clerk shall give notice of the submission of the questions by forthwith posting in at least four public places in the city notice of the filing of the petition and the character of the questions to be submitted, and the commissioner of elections shall during the four weeks next preceding the election publish notice of the submission of the questions in the same manner as is required in the case of the submission of a special question to the electors of the city.*"

Section 39 of article 3 of the Election Law provides that in Oneida county " the county clerk shall have therein the powers and duties of a board of elections, as well as those of a county clerk."

Section 3 of article 1 of chapter 444 of the Laws of 1914 provides: " The term ' commissioner of elections ' includes those officers who have similar powers and duties in counties where no commissioners of election are appointed."

Subdivision 4 of section 2 of article 1 of the Election Law provides: " The term ' board of elections ' shall include a single commissioner of elections in a county having such an officer and the county clerk in any county which by the provisions of this chapter shall have no such board or commissioner."

These excerpts of the statutes place the responsibility of publishing notice of the submission of said question and of the election on the county clerk alone.

Section 43 of article 4 of the Second Class Cities Law provides: " * * * The common council * * * shall designate not more than two newspapers published in the city. * * * Such official paper or papers shall publish such matters and in such form as shall be prescribed by statute or otherwise by general ordinance of the common council."

Section 81 of the Election Law, entitled " Publication by board of elections of notices of general and special elections," provides: " Except in the city of New York, if constitutional amendments, propositions or questions are to be submitted to the voters of the state, the notice shall state that fact and that a copy of such amendment, proposition or question *may* be obtained, upon application

to the board of elections, by any voter, and the board shall provide a sufficient number of copies thereof for distribution accordingly."

The question to be determined here is whether or not the procedure *followed by the common council and the two clerks in submitting said question to the electors of Utica complied with the requirements of chapter 444 of the Laws of 1914.*

The adoption of any of these plans by a city would work a very radical change in its form of government.

" No rule of law is more firmly established than that the intention of the lawmakers must be sought, and when ascertained given effect in construction of statutes; that such intention is to be determined from the language used, which must be given its usual and accepted meaning." (*People ex rel. McNeile* v. *Glynn*, 128 App. Div. 257, 260.) " Words and phrases are to be given their ordinarily accepted meaning for the purpose of effectuating the intent of the statute." (*Matter of Ives*, 155 App. Div. 670, 674; affd., 209 N. Y. 575.)

A cardinal rule in construing statutes is that they are to " be read according to the natural and obvious import of their language without resorting to a subtle or forced construction either limiting or extending their effect." (*Cooper-Snell Co.* v. *State of New York*, 230 N. Y. 249, 255.)

" Liberality in construction of statutes may not be stretched to the point of disregarding their plain requirements. We are no more at liberty to disregard words contained in a statute than we are at liberty to interpolate words therein." (*Matter of Bristol* v. *Buck*, 201 App. Div. 100, 102; affd., 234 N. Y. 504.)

" The exercise by the courts of a power to disregard a particular provision of a statute on the ground that it is directory merely is a delicate one and should be applied with great caution." (McKinney's Consolidated Laws, vol. 1, Statutes and Statutory Construction, § 6, p. 57.)

That the adoption of plan C would work a radical change in the form of government in the city of Utica is evidenced by section 87 of article 5 of the Laws of 1914, chapter 444, which provides: " Legislative powers vested in council. All the legislative powers of the city, however conferred upon or possessed by it, are hereby vested in a board to be known as the ' Council of the city of ————.' Such council shall be composed of a * * * mayor and six councilmen in second class cities, all of whom shall be elected at large. It shall be for all purposes the common council of the city."

By section 18 of article 2 of the above statute the city clerk was required, within five days after the filing of the petition in his office, to transmit a certified copy thereof to the commissioner of elections,

omitting the signatures, acknowledgments or proofs contained in the petition, "but in place thereof the city clerk shall state the number of signatures of electors thereon." The communication of August 8, 1931, transmitted by the city clerk to the county clerk, though informal, complied sufficiently with the requirements of the statute. In it he certified to the county clerk the question to be voted upon. He certified it over his own signature and this was enough. The statute does not prescribe the form of the certificate; hence, the city clerk was at liberty to choose his own language. (*People ex rel. Smith* v. *Foster*, 27 Misc. 576, 579, 580.) If the statute required the attachment of a seal or prescribed the language of the certificate the rule would be otherwise. (*Matter of City of Rochester* v. *Bloss*, 77 App. Div. 28, 31.)

Section 20 of article 2 of the Laws of 1914, chapter 444, provides: "The city clerk shall give notice of the submission of the questions by forthwith posting in at least four public places in the city notice of the filing of the petition and the character of the questions to be submitted." Concededly, this was not done by the city clerk. The posting of such notice was mandatory.

"It is a maxim of the law, that if an affirmative statute, which is introductive of a new law, direct a thing to be done in a certain manner, that thing shall not, * * * be done in any other manner." (*Hardmann* v. *Bowen*, 39 N. Y. 196, 199.)

The failure to comply with this provision is fatal. (*Matter of Peters* v. *Sisson*, 183 App. Div. 286.) In this case plaintiff sought a resubmission to the electors of the town of New Hartford of four local option questions, under section 13 of the Liquor Tax Law (Laws of 1910, chap. 485), which provided: "The town clerk shall also, at least ten days before the holding of such town meeting or general election, cause to be printed and posted in at least four public places in such town, a notice of the fact that all of the local option questions provided for herein will be voted on at such town meeting or general election."

Section 205 of the Election Law (Laws of 1911, chap. 649) then in force provided: "All notices of elections to which this chapter applies which are required by law to be published, advertised or posted in any county or any political subdivision thereof or therein shall be published, advertised or posted by the custodian of primary records of said county."

It was conceded in this case that it was the duty of the county clerk, who was the custodian of the primary records, and not of the town clerk, to post and publish notices to the electors of the town of New Hartford on the submission of said local option ques-

tions. The town clerk posted such notices and published them, but the county clerk did not. Peters, being out of sympathy with the result of the election, instituted proceedings against the Commissioner of Excise for a resubmission of the questions upon the ground that they had not been properly submitted. The matter came on at Special Term and the court held that there was a sufficient compliance with the statute. An appeal was taken to the Appellate Division of the Fourth Department.

Justice MERRELL, writing for that court, said (183 App. Div. 286, at p. 288): " Upon the hearing of this motion it seems to have been substantially agreed by the parties that it was the duty of the county clerk of Oneida county under the statute to post and publish notices to the electors of the town of New Hartford of the submission of the various local option questions, and that the town clerk of said town was not charged with the duty of such posting and publication. Undoubtedly such was the law. The county clerk should have given the notice but failed to act. The town clerk was without authority to post and publish the required notice. (*Matter of Town of Onondaga [Local Option]*, 163 App. Div. 191.) Notwithstanding the conceded irregularity in the posting and publication of these notices the learned justice at Special Term held, we think, erroneously, that such posting and publishing by the town clerk was sufficient. * * * The learned justice seems to have been impressed that the notice given was as widespread and complete so far as apprising the electors of the questions to be voted upon, as though made by the county clerk. Perhaps this may be so, but the difficulty is that the notice was not given by a legally authorized officer. As well might it be argued that the giving of such notice by an assessor or other officer of a town or by an individual would suffice. Again, means might be devised whereby through other forms of advertisement greater actual publicity might be secured than that provided by the statute, and still the notice would not be good, as it would not be the notice provided by the statute. *It is not a question of the giving of actual notice to 'he electors, but of legal notice under the statute.*"

In *Matter of Town of LaFayette* (105 App. Div. 25, 31), another case arising out of the Liquor Tax Law, the Appellate Division of the Fourth Department held that statutory notice was essential to the validity of an election where local option questions are submitted, saying: " It is not a question of disfranchising voters by reason of the neglect of duty of the town clerk, and we think it a dangerous rule to lay down that the town clerk may neglect to give the notice required by the plain and express terms of the statute, and then the submission be upheld in the discretion of the

court upon affidavits tending to show that really no harm or wrong was done and that the result would not be likely to be changed by a resubmission."

The Fourth Department has consistently held that legal notice is necessary for the validity of a vote taken upon such a special question. Where a statute requires notice of the submission of a question at an election, the giving of such notice is jurisdictional and a vote taken in the absence thereof is a nullity. *It is a question of legal notice, not of actual notice.*

Section 20 of article 2 of chapter 444 of the Laws of 1914 provides that the commissioner of elections shall, during the four weeks next preceding the election, publish notice of the submission of the question in the same manner as is required in the case of the submission of *a special question* to the electors of the city. The county clerk did not publish notice of the submission of said " question." He takes the position that had he published such notice, he would have had to have published it in the Rome *Daily Sentinel* and in the Boonville *Herald,* as they were the papers designated by the board of supervisors of the county of Oneida under section 20 of the County Law. This view is erroneous. Section 20 of the County Law applies only to designation of official newspapers for publication of laws and concurrent resolutions of the Legislature. Section 22 of the County Law provides for the designation by the board of supervisors of newspapers in which shall be published the election notices issued by the Secretary of State and the official canvass. These sections, manifestly, do not apply here. The question to be submitted was a purely local one. The canvass referred to in section 22 is the county canvass. The county clerk, had he complied with the statute, should have published in the Utica *Daily Press,* as that paper had been designated by the common council of the city of Utica as the official paper for official printing in the city of Utica for 1931, as required by section 43 of the Second Class Cities Law.

There is a distinction between the submission of a question at a special election and the submission of a special question at an election.

Section 19 of article 2 provides: " If a petition is not filed * * * so as to permit the questions to be submitted at a general city election, * * * the common council shall at its next regular meeting succeeding the presentation of the petition designate a day for the holding of a special election."

How is a special question to be submitted to the electors of the city of Utica? Whose duty is it to initiate such a submission? The Election Law and the Second Class Cities Law are silent upon this

subject. Section 81 of the Election Law, *supra*, relates to the submission of State wide questions to the voters of the State. We must go back to the old charter of the city of Utica in our search for precedent. Section 35 of title 3 of the charter of the city of Utica (Laws of 1862, chap. 18) provides: " The common council shall have the care, management and control of the property of the city and its finances; it shall have power to ordain, alter, modify and repeal ordinances not repugnant to the constitution and the laws of this state, such as it shall deem expedient for the good government of the city, * * * and such other ordinances, rules and regulations as may be necessary to carry such power into effect. * * *."

Section 70 of article 5, of the General City Law relates to the submission of a proposition to borrow money to the electors of a city for the purpose of building a bridge. Section 71 of said article prescribes how and when the common council shall cause the proposition to be submitted, and section 72 of said article provides: " Notice of submission. Whether such proposition shall be submitted at the annual election or at a special meeting, the city clerk *shall give at least two weeks' notice of such submission by publishing at least twice, notice thereof in two newspapers published* in any such city, and by posting such notices in at least one public place in each ward of such city, at least ten days prior to the time mentioned in such notice for such submission, * * *."

I think the submission of a special question to the electors of Utica must originate with the common council of the city. This is borne out by the provisions of section 16 of article 2 of chapter 444 of the Laws of 1914, which provides, in substance, that the electors of the city, who desire the submission of a special question, must petition the common council to cause the same to be submitted to a vote of the electors of the city. The petition in question asked the council to do that precise thing. It reads: " We, the undersigned, qualified electors of this City, respectfully petition your honorable body to cause to be submitted to a vote the following question." It may be that the common council, when it received the petition herein, by appropriate action, should have ordered the submission of said question to the electors of the city at the 1931 general election and should have prescribed the period of publication to be made by the county clerk, which should, at least, conform to section 81 of the Election Law. This it did not do. It is not necessary to decide this question now. I draw attention to it for the consideration of the sponsors of any similar movement in the future.

Upon the receipt of the certified copy of the petition on August 8,

1931, it became the duty of the county clerk to cause the question so certified "*to be duly submitted to a vote of the electors of the city at such general city election.*" This duty involved the due publication of the notice of submission in the official paper as provided in section 20 of article 2, *supra.* Merely placing the question on the official ballots as "Local Proposition No. 7" was not sufficient. The publication of such notice was jurisdictional. The failure to comply with the statute rendered the attempted submission a nullity and the election invalid.

Plaintiff challenges the legality of the manner in which the county clerk caused the "Question" to be placed upon the official ballots used upon the vertical and horizontal voting machines. There were six constitutional amendments to be voted upon at the 1931 election. The special "Question" was labeled "Local Proposition No. 7," and was printed following the six amendments. While this arrangement was not strictly in compliance with the statutory requirements, it was sufficient, under the circumstances, there being no evidence that any elector, on election day, was confused by the arrangement of the "Question" on the machines, or was actually misled thereby. (*Matter of Merow,* 112 App. Div. 562, 570; *Matter of Arnold,* 32 Misc. 439, 442; *Matter of Cipperley,* 50 id. 266, 270.)

Counsel for the plaintiff does not seriously press the argument that the optional city government law is unconstitutional or has been repealed. The fact is otherwise. (*Matter of Klein* v. *Dalton,* 245 N. Y. 537; *Cleveland* v. *City of Watertown,* 222 id. 159; *Matter of McLean* v. *Boyd,* 140 Misc. 218, 222.)

All parties concede that the petition, in form and substance, complied with the statute and that it was duly presented to the common council by filing it with the city clerk on August 5, 1931. From this point on, with the exception of the transmission of the "Question" to the county clerk, the evidence depicts a series of costly blunders which rendered abortive the effort to effect the desired change in the government of Utica. The provisions of the statute governing the submission of this question to the electors of Utica are neither uncertain nor ambiguous. They are as patent as a mid-day August sun. Of no avail now, the labor expended. Thwarted, the will of the majority so handsomely expressed at the polls. The blunders made are safe even from the curative powers of a court of equity.

Section 26 of article 2 directs the city clerk, on the adoption of the plan, and within thirty days following the election, to prepare a complete record which shall include "*original affidavits of the publication of the notice of the election, with copies of the notice as*

*published, attached,* a specimen of the ballots used at the election, and a certified copy of the canvass of the votes cast at such election, and to transmit such record to the office of the secretary of state, where it shall be kept as a public record." Obviously the city clerk could not comply with the provisions of this section as there was no publication of notice of the election or of submission of the question as commanded. Certifying to the Secretary of State less than the statute required would have availed nothing.

If the court should attempt to save the day by glossing over the defects inherent in the proceedings before it, they would soon emerge in new and costly litigation. The deepest grave would not restrain them.

Let the blunders of this venture in political action remind the electorate that success in public affairs is the product of eternal vigilance; that once enlisted in a public enterprise they must push the attack relentlessly till the last trench is carried and the field is won.

Plaintiff prevails. Judgment is directed in accordance with this memorandum, with costs.